**UNITED STATES of America,**
**Appellee,**

v.

**Ruth H. ROLAND, Appellant.**

**No. 8744.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1963.

Decided June 3, 1963.

A. Andrew Giangreco, Alexandria, Va., for appellant.

Plato Cacheris, First Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BRYAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

Convicted upon a plea of guilty of making a false obligation in violation of Title 18 U.S.C.A. § 1005, Mrs. Roland was sentenced to a year in prison. Apparently surprised that she did not receive probation, Mrs. Roland promptly filed a motion to set aside the judgment of conviction

and for leave to withdraw her plea of guilty. This motion was denied after a hearing, the denial of that motion being the subject of this appeal. We affirm.

The motion for leave to withdraw the plea of guilty was founded upon allegations that as a result of an automobile accident some six months earlier she had been under psychiatric care, and, in the opinion of counsel, was unable clearly and intelligently to understand the proceedings against her. It also alleged, as mitigating circumstances, that she embezzled the funds of the bank, by which she was employed, under threats from her husband who needed money to replace funds he had embezzled from a post of the Veterans of Foreign Wars, of which he was the Treasurer. At the hearing, Mrs. Roland also suggested, for the first time, an FBI agent had expressed the opinion to her that she probably would be put on probation, and her counsel now contends that this advice to his client rendered ineffective his subsequent advice to and representation of her.

At the conclusion of the hearing before Judge Butzner, he found that Judge Lewis, the sentencing Judge, had considered all the matters advanced in support of the motion, and that permission to withdraw the plea was unwarranted.

At the hearing on the motion, Mrs. Roland testified that she began to embezzle funds from the bank upon the importunities of her husband, who feared exposure for embezzling funds which had come into his hands as the treasurer of a post of the Veterans of Foreign Wars. Her embezzlements from the bank continued, she said, under threats of physical harm by her husband. The husband committed suicide in 1960, and, thereafter, Mrs. Roland's embezzlements from the bank continued for the purpose, she testified, of paying debts of the husband, of which she was unaware prior to his death.

More than a year after the husband's death, Mrs. Roland was in an automobile accident. She was not immediately admitted to a hospital, for there were no apparent injuries, but that afternoon at her home she was found to be in a comatose state, as a result of which she was hospitalized for several days. Before she could return to her position at the bank, the falsity of entries by which her embezzlements had been concealed was discovered. She was interviewed by an agent of the FBI, to whom she admitted her defalcations. Mrs. Roland and her daughters testified that thereafter Mrs. Roland was upset and without the happy disposition she had possessed until sometime prior to the death of her husband.

At the time of sentencing, Mrs. Roland was employed as the manager of a ladies' beauty salon, having some seventeen employees under her supervision.

When Mrs. Roland first appeared before Judge Lewis, she sought to waive indictment and enter a plea of guilty. In answer to the Court's inquiry, she stated that she had no counsel and wished none, but the Court informed her, in view of the serious nature of the charges against her, she needed the advice and representation of competent counsel. The Court refused to accept the plea and appointed Mr. Giangreco, who had previously served for a number of years as an Assistant United States Attorney, to represent her.

Later, Mrs. Roland, with Mr. Giangreco, again appeared before the Court. This time, Mrs. Roland was duly arraigned in accordance with the requirements of Rule 11 of the Rules of Criminal Procedure. In response to inquiry, she stated that no promises or threats had been made to her, and the Court, having fully satisfied itself that the plea of guilty was tendered understandingly and voluntarily, accepted the plea. The Court deferred sentencing, however, until the probation officer could make an investigation and prepare a presentence report for the Court's use.

Eight weeks later, the defendant, with her attorney, again appeared before the Court, at which time Mr. Giangreco made a plea for probation, Mrs. Roland had nothing to add to her attorney's statement, saying that everything had been

fully covered. Thereupon, Judge Lewis sentenced the defendant to a year in prison, and the defendant then filed the motion to vacate the judgment and for permission to withdraw the plea of guilty.

Under Rule 32 of the Federal Rules of Criminal Procedure, a motion to withdraw a plea of guilty may ordinarily be made only before sentence is imposed or while imposition of sentence is suspended. Such motions before sentence should be allowed with great liberality, but after judgment and the imposition of the sentence, the Rule gives the Court the power to grant such a motion if such action appears to be necessary "to correct manifest injustice." A motion to withdraw a plea which should be allowable as of course, or almost so, before judgment and the imposition of sentence, is allowable after sentence has been imposed only in extraordinary cases, and then the District Judge has a substantial discretion in making a determination of the requirements of justice. On appeal, we can reverse the refusal of such a motion only if we can say that manifest injustice obviously would otherwise be done.

The first ground of the motion is counsel's assertion of his belief that the defendant was unable to understand the proceedings. This is founded upon asserted distress following the suicide of her husband, a brief period of psychiatric care after the automobile accident, and upon testimony that the defendant was at times upset and no longer naturally happy after the automobile accident and the discovery of her defalcations.

Clearly, this is far from a showing that Mrs. Roland was incompetent to stand trial or that she did not understand and thoroughly appreciate the nature of the proceedings against her. At all times after she was first interviewed by the FBI, she freely admitted her guilt, and there appears to be no doubt of it. At the postconviction hearing, she testified that she wanted to enter a plea of guilty, because a full blown trial, with its attendant publicity, would only bring further shame upon her daughters. The Court accepted the plea only after insisting that Mrs. Roland have the advice of competent counsel, and, only then, after satisfying itself, out of Mrs. Roland's own answers, that she fully understood the charge against her and the seriousness of the possible consequences.

The suggestion of mental infirmity is wholly unsupported by the postconviction testimony. There was testimony that Mrs. Roland was under the care of a doctor, identified as a psychiatrist, during the few days that she was hospitalized following the automobile accident some six months before the trial. There was no testimony that she had been under the care of a psychiatrist since that hospitalization, and not even a suggestion that there had ever been a diagnosis of mental illness or deficiency. That Mrs. Roland was "upset" at times during the six months preceding her trial is no more than one would expect of a woman whose crimes had been discovered, with the result of loss of her position with the bank and the commencement of criminal proceedings against her. Nevertheless, at the time of trial, she was employed in another responsible position of authority, which lends no support to the suggestion of mental incompetence. Indeed, the plea for probation was founded, in part, upon the contention that Mrs. Roland was a responsible person and should be allowed to continue in the position she then held in order that she might support herself and her younger, unmarried daughter, then 18-years old.

The other ground of the motion was that the defendant took the money from the bank because of the threats and coercive actions of her husband. As Judge Lewis had observed before imposition of the sentence, however, Mrs. Roland's extractions occurred over a substantial period of time, and, as Mrs. Roland admitted at the postconviction hearing, continued even after the death of her husband. At most, however, such considerations were relevant in mitiga-

**410**

tion only and, having been fully considered by Judge Lewis before the sentence was imposed, they furnished no support for the motion to vacate the judgment when that motion came before Judge Butzner.

 Finally, Mrs. Roland's testimony at the postconviction hearing in Richmond that an FBI agent had told her that she "in all probability * * * would be put on probation" furnished no basis for relief. There was no direct contradiction of that testimony, but there was nothing in the motion to suggest to the District Attorney that any such testimony would be tendered at the hearing, and the FBI agent, stationed in Alexandria where the trial occurred, was not available in Richmond. However, when Judge Lewis first refused to accept the plea, he emphasized the serious nature of the charges, and Mrs. Roland's counsel stated at the postconviction hearing that he had talked to her of the possibility of having to serve a prison sentence. Moreover, Mrs. Roland, herself, testified that she wanted to plead guilty, not because of any expectation of leniency founded upon the asserted statement of the agent, but because she wished to avoid, so far as she could, further shame upon her daughters. When arraigned, the defendant declared that no promises had been made to her. In the postconviction proceedings the Court was not required to find that the asserted remark of the FBI agent fathered the guilty plea despite everything that Court and counsel told her thereafter.

Mrs. Roland at all times has admitted her guilt of the offense of which she was charged. There is not the slightest suggestion here that, if allowed to change her plea, she could offer anything in defense of the charge against her. She was properly arraigned, the Court exercising great care to comply with Rule 11 of the Federal Rules of Criminal Procedure and insisting that she have the advice of a competent attorney before acceptance of the plea would be considered. There is a complete failure of support for the suggestion of the motion that Mrs. Roland was incompetent to stand trial or that she did not fully understand the nature of the proceedings against her. Indeed, as Judge Butzner observed at the postconviction hearing, substantially everything urged in support of the motion before him had been considered by Judge Lewis before the sentence was imposed, for all of it was set forth in the plea for leniency or in the probation report, which Judge Lewis had and to which he referred.

No basis appears for vacation of the judgment or for allowing the defendant to withdraw her plea of guilty. The order denying the motion was proper.

Affirmed.