**UNITED STATES of America, Appellee,**

v.

**Joseph James McGIRR, Appellant.**

**No. 13997.**

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1970.

Decided Nov. 24, 1970.

John J. Bishop, Jr., Towson, Md., and William L. Kaplan, Hyattsville, Md. (Court-appointed counsel), for appellant.

Paul M. Rosenberg, Asst. U. S. Atty. (Stephen H. Sachs, U. S. Atty., and Paul R. Kramer, Deputy U. S. Atty., on the brief), for appellee.

Before BOREMAN, BRYAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

On June 16, 1967, Joseph James McGirr entered a plea of guilty to a charge of conspiring to violate the laws of the United States against counterfeiting. 18 U.S.C.A. § 371. Before sentencing, McGirr, acting *pro se*, requested permission to withdraw his guilty plea. Subsequently, his court-appointed counsel filed formal motions again requesting leave to withdraw the plea, and for permission to interpose the defense of not guilty by reason of insanity. The district court (Thomsen, C. J.) denied the motion to strike the plea and sentenced McGirr to imprisonment for a term of four years. From the judgment of guilt and resulting sentence, defendant appeals. Because we conclude that the motion to strike the plea should have been granted, we reverse and remand for further proceedings.

I

On June 2, 1966, McGirr was arrested and charged with counterfeiting. An indictment was returned and trial was set for some time in May, of 1967. Before trial on these charges the defendant entered into an agreement with the Assistant United States Attorney whereby, in return for defendant's cooperation with the government, the original indictment would be dismissed and a new indictment returned which would contain a conspiracy count to which McGirr would plead guilty. The government agreed to dismiss all other counts in the superseding indictment, to recommend that a sentence not to exceed four years be imposed pursuant to 18 U.S.C.A. § 4208(a)(2), making defendant eligible for parole at any time, and to inform the parole board of the extent of defendant's cooperation with the government.

In accordance with his agreement, McGirr cooperated fully with the government. He supplied information which led to other arrests, and he and five other defendants were indicted on June 13, 1967, by a Maryland Grand Jury. McGirr was charged in six counts of the indictment. On June 16, 1967, he pleaded guilty to the first count (conspiracy to violate the laws against counterfeiting) and not guilty to the remaining counts which charged substantive offenses. Sentencing was postponed pending a presentence investigation and the trial of the other defendants, and defendant was permitted to remain free on bail.

On January 16, 1968, McGirr was charged in four additional Maryland indictments for bank robbery. Two of the robberies were alleged to have occurred before and two after his arrest for counterfeiting. An indictment was also returned against him in the District of Columbia charging the hijacking of a trailer truck.

Meanwhile, McGirr's cooperation with the government continued. On February 5, 1968, he testified at the trial of a codefendant, Leonard Fentress, incriminating not only Fentress but himself.

Fentress was convicted and sentenced to seven years' imprisonment.[1]

McGirr's sentencing on the conspiracy charge to which he had pleaded guilty was scheduled before his trial on the bank robbery charges. He asked that it be delayed until after trial of the bank robbery charges, and the government, apparently because of his prior cooperation, agreed. But then the trial of the first bank robbery charge was delayed by McGirr's flight; and after McGirr was apprehended and bail revoked, McGirr was scheduled to be sentenced on October 17, 1968. On October 16, however, the court granted a motion to defer sentencing pending a mental examination in connection with the bank robbery charges. On November 4, 1968, McGirr was admitted to St. Elizabeth's Hospital for psychiatric examination. He was released sometime in March, 1969.

By letter of April 3, 1969, McGirr filed a *pro se* motion requesting permission to withdraw his guilty plea since he had "uncovered new evidence pertaining to his defense." Some months elapsed as a result of confusion on the part of the Clerk as to which judge—Judge Harvey who was assigned to try the bank robbery cases or Judge Thomsen before whom the conspiracy case was pending—should rule on the motion and the necessity of appointing new counsel to represent McGirr. New counsel was appointed and, on August 5, 1969, a formal motion was filed requesting leave to withdraw McGirr's plea of guilty "on the ground that the plea of guilty was entered improvidently, without full understanding of his mental impairment which became apparent after a subsequent period of psychiatric evaluation at St. Elizabeth's Hospital in Washington, D. C." In support of this motion, McGirr stated in an affidavit:

> When the plea of guilty was entered, I was not fully aware of the nature and extent of my mental impairment which was revealed to me after extensive mental observation and examination at St. Elizabeth's Hospital, Washington, D. C. I am not guilty of the crimes charged and wish to change my plea of not guilty and interpose the defense of not guilty by reason of insanity.

Also on August 5, defense counsel filed a separate motion for leave to interpose the defense of not guilty by reason of insanity. A supporting letter from the Superintendent of St. Elizabeth's was filed on August 26 in which it was stated, "[I]t is our opinion that he [McGirr] is an Antisocial Personality and was so at the time of the alleged offenses, at which times he was able to appreciate the criminality of his act, but he was not able to conform his conduct to the requirements of the law."

When McGirr's motion came on for hearing, his counsel produced an eleven-page report from St. Elizabeth's which presented a more comprehensive picture of the extent of defendant's psychiatric difficulties than had the earlier letter of the Superintendent. Judge Thomsen had not seen this report prior to the hearing nor had the government's attorney had an opportunity to do more than glance over it for about five minutes before the hearing began. Judge Thomsen stated that he did not think the letter from St. Elizabeth's established a basis for an insanity plea under the American Law Institute test of criminal responsibility, adopted by this circuit in United States v. Chandler, 393 F.2d 920 (4 Cir. 1968), but that he would read the more comprehensive report before reaching a decision. The government contended that, under the circumstances, the defense of insanity was "utterly frivolous." The defendant then pointed out that in the bank robbery case the government had proposed that the court order another psychiatrist to examine him and that the court had done so.[2] He asked that

---

1. In Fentress' appeal, we affirmed. United States v. Fentress, 405 F.2d 501 (4 Cir. 1969), cert. den., 395 U.S. 907, 89 S.Ct. 1749, 23 L.Ed.2d 220.

2. It was shown that the defendant at all times refused to cooperate with this court-appointed psychiatrist.

his bond be reinstated so that he could go to Phipps Clinic, Johns Hopkins Hospital, for another extensive examination and report. Judge Thomsen declined to rule on this request until he had studied the entire report from St. Elizabeth's. At the close of the hearing, defense counsel stated that McGirr wanted the doctors from St. Elizabeth's to testify in support of his motion. The court replied, "No, I do not see any need to do that at this time."

Approximately one week after the hearing, Judge Thomsen's office received a phone call from defense counsel to the effect that McGirr desired a prompt ruling on the motion, and that, if the judge did not rule promptly, application for a writ of mandamus would be made to this court to require him to do so. Counsel stated further that if the motion to withdraw the guilty plea was denied, McGirr wanted to be sentenced promptly so that he could prosecute an appeal. Defendant's earlier requests that his bond be reinstated so that he could enter Phipps Clinic, and that the doctors from St. Elizabeth's be called to testify in support of his motion were not repeated on the occasion of this phone call. On October 1, 1969, Judge Thomsen filed an opinion and order denying defendant's motion to withdraw his guilty plea.

On October 2, 1969, defendant appeared in court for sentencing. McGirr again asked leave to withdraw his guilty plea and raise the defense of insanity. After further discussion Judge Thomsen again denied the request. The government then, pursuant to its earlier agreement, recommended that McGirr should not receive a sentence of more than four years to be imposed under the provisions of 18 U.S.C.A. § 4208(a) (2) making him eligible for parole at any time. The court accepted these recommendations and sentenced McGirr accordingly, giving him credit for the period of his incarceration after the revocation of bail. The government moved to dismiss the remaining counts of the indictment.

The court reserved its ruling on this motion pending the outcome of this appeal.

## II

Before us, defendant contends that: (1) the district court abused its discretion in not allowing him to withdraw his plea of guilty; (2) the district court erred in not inquiring further into his plea of insanity; and (3) the district court violated his rights by unreasonably delaying the imposition of sentence. We find it necessary to consider only the first contention.

## III

We have said by dictum that a motion to withdraw a guilty plea before sentencing "should be allowed with great liberality" and that it "should be allowable as of course, or almost so," United States v. Roland, 318 F.2d 406, 409 (4 Cir.1963). The dictum is supported by decided cases in other circuits. 2 Wright, Federal Practice and Procedure, § 538, pp. 473–75, n. 67. Rule 32(d), F. R.Crim.Pro., permits a motion *after* sentencing only to "correct manifest injustice," but places no such limitation on a motion made *before* sentencing. The rule stated in the *Roland* case is the rule governing this case. A corollary to the rule is that because the constitutional right of jury trial attaches to the merits of the defense to be asserted if the motion is granted, the court should not ordinarily pass on the merits of the defense. Only in the extraordinary case, such as where there is some reason to claim that the defense is "patently frivolous," Gearhart v. United States, 106 U. S.App.D.C. 270, 272 F.2d 499, 503 (1959) (dictum), should a hearing be conducted and should the court consider the merits of the defense.

In his opinion denying the motion, the district judge set forth the conclusions of the doctors at St. Elizabeth's Hospital that defendant was able to appreciate the criminality of his act, but defendant "was not able to conform his conduct to the requirements of law." He also re-

ferred to the A.L.I. test of insanity, which we adopted as the law of this circuit in United States v. Chandler, 393 F.2d 920 (4 Cir.1968), excusing criminal conduct if as a result of "mental disease or defect," an accused "lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." The A.L.I. test *excludes* "an abnormality manifested only by repeated criminal or otherwise anti-social conduct" within the definition of "mental disease or defect." On these facts and against this legal background, the district judge stated "[t]he report as a whole  * * * shows that any inability to conform his conduct to the requirement of the law was not caused by any 'mental disease or defect' within the meaning of the American Law Institute test.  * * *" In this same regard, the district judge added: "[t]his Court has grave doubts whether such an antisocial personality such as the full report shows McGirr to have, is a 'mental disease or defect' within the meaning of the A.L.I. test. Certainly, a jury would not be required to find him not guilty by reason of insanity. United States v. Wilson, 399 F. 2d 459 ([4 Cir.] 1968).  * * *"[3]

If denial of McGirr's motion to withdraw his guilty plea before sentencing is to be sustained, it must be on the ground that the inability to conform his conduct to the requirements of law reported by the doctors at St. Elizabeth's Hospital was manifested only by repeated criminal or otherwise anti-social conduct so as to make his motion, and the defense sought to be interposed, patently frivolous. Our study and analysis of the report will not support these conclusions. To the contrary, the report discloses manifestations of mental disease or defect other than defendant's history of offenses.

The ultimate diagnosis in the report is "Antisocial Personality. Severe," and the ultimate conclusion was that defendant was "suffering from an antisocial personality at the present time and was so suffering at the time of the alleged offenses" and while "able to appreciate the criminality of the act" he was not "able to conform his conduct to the requirements of the law." The report discloses the objective basis, other than manifestations of the inability to conform to lawful behavior, from which the diagnosis and the ultimate conclusions were reached. Thus, the "Psychological Summary" portion of the report states:

> The Rorschach protocol was of primary significance in establishing some kind of comprehensible picture of this patient. A minimal number of responses (10) and unusually long reaction times on every card suggested an excessive degree of control on the part of the patient. Particularly considering the intellect of this patient this control is indicative of the patient's fear of projecting something other than that which he chooses to project, other than intellectually devised responses. He had three good popular responses, one good human movement response, and an 80% F form response all of which reveals a superficially intact ego. The absence of color, a tension-originated animal movement response and the rejection of two cards comprise the elements of a person who is suppressing primitive impulses to a degree that might be dangerous.

> Despite the compulsive exterior there is a sociopathic existence prevailing which serves as a vehicle for his primitive urges. These two personalities—the compulsive, orderly, rigid, conforming existence and the

---

3. In a subsequent colloquy at sentencing, the district judge seemingly disavowed having decided whether defendant's mental condition constituted a "mental defect." He suggested that the question would be a jury issue only in a subsequent trial on other charges, where, in argument we were told, the defense later prevailed. With regard to the instant case, the district judge also seemed to suggest that a jury trial on the issue was foreclosed by the fact that the guilty plea had been tendered and accepted. This is clearly not the law.

primitive, sociopathic, antisocial mode of behavior—constitute two separate and distinct patterns which suggest the multiple personality. It appears, however, that the patient is aware of both of these patterns of behavior and there is some question as to whether a diagnosis of multiple personality can truly be made. The absence of color in the Rorschach is further evidence that this is not a truly hysterial or neurotic patient but rather one of a modified character disorder.

The essence of the conclusions stated in the psychological summary was accepted in the "Medical Staff Conference (Diagnosis)" portion of the report. There, it was stated:

> Psychologicals show what Dr. Bauer feels is a multiple personality, in that on the one hand there is a very conventional, socially accepted manner of handling situations in living and on the other hand a life preoccupied with primitive adventure and crime. "He is nevertheless driven by impulses which are stronger than the judgment which he possesses most of the time."

from which it was concluded:

> It is the opinion of the staff conference that this patient has the personality life pattern of an antisocial personality and this is typified by his behavior in the interview. The patient did state that he felt that he was not able to control the actions leading up to the commission of this crime and although this is said with the same glib facile manner, nonetheless the staff is of the opinion that he is correct, that the commission of these crimes is part and parcel of his sociopathic personality. He will so be reported to the Court.

■ To us, the conclusion is inescapable that medical experts find that defendant suffered from a mental defect manifested by psychological tests and by his conduct during testing and during interviews, as well as by antisocial conduct, and that this defect had deprived him of criminal responsibility as defined by the A.L.I. We do not decide that McGirr was insane under the A.L.I. test. Whether this conclusion by the doctors at St. Elizabeth's Hospital should be accepted was manifestly a jury question, particularly since only slight evidence of insanity is necessary to cast the burden of proving sanity upon the prosecution and to take the issue of sanity to the jury. Hall v. United States, 295 F.2d 26 (4 Cir.1961). We decide only that the report had sufficient substance that the district judge abused his discretion in denying the motion to withdraw the plea.

Reversed and remanded.

BOREMAN, Circuit Judge (dissenting):

I would agree with the majority that leave to withdraw a plea of guilty before sentencing should normally be granted. It is well settled, however, that the granting of such leave is discretionary with the trial court, and the scope of review on appeal is limited to determining whether there has been an abuse of discretion. United States v. Guerini, 296 F.2d 33 (4 Cir.1961). I further agree with the majority that the district court should be sustained if McGirr's abnormality, as reported by the doctors at St. Elizabeth's Hospital, was manifested only by his repeated criminal conduct. But, contrary to the majority view, my analysis of that report convinces me that it supports such a conclusion and that is my basis for dissatisfaction and disagreement. I cannot accept the holding that the district court abused its discretion.

Considered as a whole, as is proper, the report indicates that McGirr's *only legally cognizable manifestation of abnormality* was his repeated criminal behavior. The report described McGirr as "bright," "pleasant," "cooperative," "does not smoke nor show any particular mannerisms reflective of anxiety," "oriented as to time and place," and "facile and glib with words." It further stated that "[H]is thoughts are at all times

coherent without any evidence of bizarre thoughts or behavior," and that, "[H]e shows no disorder in his memory or orientation." On the other hand, the "objective basis" disclosed in the report, which the majority views as a sufficient manifestation of disease or defect to support an insanity plea, is wholly unpersuasive. My brothers point to the "Psychological Summary" portion of the report. Noting that the staff psychologist who interpreted the psychological tests had information beforehand of the nature and extent of McGirr's criminal activities, I wonder whether the "Rorschach protocol" which was of "primary significance" in establishing a "comprehensible picture" of McGirr's mental capacity would have resulted in a similar "picture" if the subject had been a law-abiding citizen. In other words, did the psychological tests themselves provide the psychologist with a basis for a diagnosis of possible mental disease thereby constituting a manifestation of abnormality within the meaning of the A.L.I. test? The language of the "Psychological Summary" indicates to me that a possible multiple personality was suggested to this psychologist, not by the psychological tests but by McGirr's criminal behavior, and that this possibility was actually *refuted* by the test results; further, it was his opinion that *despite* the indications of a possible multiple personality (even if evidenced by partial test results), additional evidence showed that McGirr was not "a truly hysterical or neurotic patient but rather one of a modified character disorder." I think it is clear that a "modified character disorder" is not an abnormality which was intended by the American Law Institute under its formulated test to exempt an individual from criminal responsibility. To the contrary, it would seem to be precisely the type of case which the A.L.I. had in contemplation in excluding abnormalities "manifested only by repeated criminal or otherwise anti-social conduct."

The majority also points to the "Medical Staff Conference (Diagnosis)" section of the report. I find no indication in this section whatsoever of any manifestation of a mental disease or defect other than repeated criminal activity. The statement contained therein that, "Psychologicals show what Dr. Bauer feels is a multiple personality * * *" is simply not what was reported in the "Psychological Summary" as discussed above. And while McGirr's behavior during an interview is described as typifying "the personality life pattern of an antisocial personality," this should not be considered an objective manifestation of a mental disease or defect within the meaning of the A.L.I. test because it is clear that an "antisocial personality" is not, of necessity, such an abnormality. Phrases such as "antisocial personality" ("sociopath" and "psychopath" are similar) provide labels recognized in the profession as indicating particular behavioral patterns, but they are conclusory medical terms[1] and, without more, are of dubious value to a court or jury which must assess the legal responsibility of the individual. To say that McGirr committed crimes because he was an "antisocial personality" is to utter little more than a tautology; further explanation is necessary. Without additional evidence, behavior which merely typifies an "antisocial personality" would not provide an objective manifestation of an abnormality to support a plea of insanity.

The majority implies that the district court committed error in undertaking to determine the merits of the proffered defense of insanity, going beyond the permissible threshold question of "frivolity." *See* Gearhart v. United States, 106 U.S.App.D.C. 270, 272 F.2d 499 (1959). Alternatively, the majority indicates the possibility that the district judge committed error in that he "seemed to suggest that a jury trial on the issue was foreclosed by the fact that the guilty plea had been tendered and

1. *See* United States v. Chandler, 393 F.2d 920, 926, n. 17 (4 Cir. 1968).

accepted." (See footnote 3, majority opinion.) I cannot agree that the district judge undertook to determine McGirr's sanity nor do I think he felt that a jury trial was foreclosed by the plea.

In its opinion denying the motion, the lower court stated, "The report as a whole * * * shows that any inability to conform his conduct to the requirement of the law was not caused by any 'mental disease or defect' within the meaning of the American Law Institute test * * *." This statement clearly implies that the court believed an insanity defense to be "patently frivolous" in this case and that this conclusion was reached not because the district judge found McGirr to be criminally responsible but simply because he found no indication to the contrary in the report from St. Elizabeth's. The following colloquy between defense counsel and the court at the sentencing hearing makes abundantly clear that the possibility of additional evidence casting new light upon McGirr's mental status was contemplated by the court:

"MR. ROGERS: Certainly, my client, notwithstanding the fact that the court has ruled on the issue of the plea with respect to insanity, feels and has insisted that I proceed with the possibility of getting him some medical treatment.

"The court has made a decision as to whether Mr. McGirr's condition is a mental defect, but I think it would —

"THE COURT: I have not decided that. That has to be decided, I suppose, by the jury in the bank robbery cases."

Any claim that the district court concluded that a jury trial was foreclosed by the guilty plea is refuted by the very fact that a hearing was held on the defendant's motion for leave to withdraw his plea; indeed, a hearing would not have been ordered had the court reached any such conclusion. Further, the court's opinion denying the motion contains no indication that it thought the guilty plea would have such an effect.

At the sentencing hearing, the judge did make the following explanatory statement:

"I am not passing in any way here on any possible defense which he may have to any of the bank robbery cases on the grounds, in effect, that he cannot control his conduct, which is what he said.

"Now, whether that is due to a mental disease or defect within the meaning of the law applicable in this Circuit, or whether it is due to something else, is a matter which will have to be decided there. I do not think it has to be decided here, because it was certainly a matter which was washed out by the plea and by what was done after the plea. I think it would be a mistake to do it in this case." (Emphasis added.)

Considered in light of the court's reasoning in its opinion and the fact that a hearing was held at defendant's request, this language does not indicate to me that the district judge felt that a jury trial was foreclosed by the guilty plea.

I conclude that the report from St. Elizabeth's contains no indication of professional opinion that McGirr's inability to conform his conduct to the requirements of law resulted from an abnormality which was manifested in any way other than by such inability itself, and that the district court properly so found. The report at most would support, but not compel, a conclusion that the testimony of the doctors from St. Elizabeth's and/or further examination of the defendant at Phipps Clinic, both of which the defendant had requested the opportunity to provide, may have been helpful to the court. But it is to be emphasized that the district judge did not deny either of these requests; he merely declined to rule on them until he had an opportunity to study the report and, before he acted further in the matter, he was presented with a demand by the defendant, under threat of mandamus, for

a ruling on the motion to withdraw the guilty plea and for prompt sentencing if the motion were to be denied. At the sentencing hearing following this demand, McGirr renewed his request to withdraw the plea, but did not again ask that the doctors from St. Elizabeth's be called or that his bond be reinstated so he could undergo further tests at Phipps Clinic. The district judge thereupon reached a decision on the basis of what was before him at the time, i. e., the report from St. Elizabeth's.

Finding no abuse of discretion, I would affirm the decision of the district court.[2]

2. For reasons unnecessary to discuss here, I find no merit in the defendant's third assignment of error concerning the delay in imposition of sentence.