**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Sam PRESLEY, Sr., et al.,**
**Defendants-Appellants.**

**No. 71-3577.**

United States Court of Appeals,
Fifth Circuit.

May 4, 1973.

Rehearing Denied June 27, 1973.

Roland J. Mestayer, Jr., Pascagoula, Miss., Thomas M. Haas, Mobile, Ala., for defendants-appellants.

Robert Hauberg, U. S. Atty., Jackson, Miss., Paul G. Kratzig, Sp. Atty., U. S. Dept. of Justice, New Orleans, La., Sidney M. Glazer, Shirley Baccus-Lobel, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

In July, 1970, appellants and co-defendant Pat Presley, all Mississippi residents at the time of the alleged offenses, were indicted for offenses in connection with the operation of a gambling casino in Mississippi on various dates between July, 1965, and January, 1966.[1] The appellant, Sam Presley, Sr. owned the Sage Patch Casino in Jackson County, Mississippi, and the other appellants were his employees. Count One charged a violation of 18 U.S.C. Section 371, by conspiring to use a facility of interstate commerce for the purpose of managing, establishing, carrying on, facilitating or promoting illegal gambling activities in violation of 18 U.S.C. Section 1952.[2] Counts Two through Eight charged substantive violations of Section 1952. For purposes of this appeal, appellants admit that illegal gambling activities were conducted and that the interstate facility employed to promote their gambling activities was the collection by use of the mails, "of" out of state checks given them by their customers and deposited in a Mississippi bank.

Appellants were arraigned on August 10, 1970, and pled "Not Guilty" to all counts of the indictment. Various mo-

---

1. Miss.Code 1942 Ann. tit. 11, ch. 1, Sections 2190 & 2192, classifies gambling as a misdemeanor.

2. § 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterful activity" means (1) any business prise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

(c) Investigations of violations under this section involving liquor or narcotics shall be conducted under the supervision of the Secretary of the Treasury.

Added Pub.L. 87-228, § 1(a), Sept. 13, 1961, 75 Stat. 498, and amended Pub. L. 89-68, July 7, 1965, 79 Stat. 212.

Subsequent to appellants' indictment, Section 1952 was amended to cover the Controlled Substances Act, Title 21 U.S.C. Chapter 13, Subchapter I, Secs. 801–904, inclusive. The amendment in no way affects this case. It reads:

§ 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises

* * * * *

(b) As used in this section "unlawful activity" mean (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

(c) Investigations of violations under this section involving liquor shall be conducted under the supervision of the Secretary of the Treasury. As amended Pub.L. 91-513, Title II, § 701(i)(2), Oct. 27, 1970, 84 Stat. 1282.

tions thereafter filed by appellants were heard and overruled in January, 1971, by the district judge in a written opinion. On March 9, 1971, appellants and their co-defendant Pat Presley were allowed to withdraw their pleas of "Not Guilty" and enter pleas of *nolo contendere.* Pursuant to Fed.R.Crim.P. 11[3] the court addressed each defendant personally in an effort to determine that the *nolo contendere* pleas were made voluntarily and with understanding of the nature of the charge and the consequences of the plea. Based upon the pleas of *nolo contendere,* and satisfied as to compliance with Rule 11, the court made a finding of "Guilty," passed the case for sentencing at a future date, and requested a pre-sentence report.

On April 5, 1971, the United States Supreme Court by its opinion in Rewis v. United States, 1971, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493, interpreted Section 1952 as applying to situations which involved more than "merely conducting the illegal operation," not where the interstate activity was purely incidental to the illegal operation. 401 U.S. at 813, 91 S.Ct. at 1060, 28 L.Ed.2d at 497. When *Rewis* came to the attention of their counsel, appellants filed a motion in the district court to dismiss the indictment on the ground of failure to charge a federal offense, relying on *Rewis.* Hearing on the motion was set for November 8, 1971. In the meantime, notice was sent to each defendant to appear for sentencing November 9, 1971.

The hearing on the motion to dismiss was held as scheduled and the district court ruled the next day that appellants' reliance on *Rewis* was misplaced and thus denied the motion. Immediately thereafter, still prior to sentencing, each defendant requested leave of court to withdraw his plea of *nolo contendere* substitute the plea of not guilty and an opportunity to present facts and legal argument in support of his motion. These requests were denied on the apparent basis that the assertion that a recent decision might affect the legality of the indictment was not sufficient ground to warrant further delay or withdrawal of pleas knowingly and voluntarily entered. Sentence was then imposed.

Following sentencing appellants filed a number of motions, of which the most significant here was a request for the court to reconsider its denial of their motions to substitute pleas of not guilty for their *nolo contendere* pleas. The district judge denied all motions and appellants appeal. We reverse.

Rule 32(d), Fed.R.Crim.P., provides safeguards against the consequences of an improvident plea of guilty or *nolo contendere,* as follows:

"Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

■■ This rule does not confer an absolute right to withdraw a plea of guilty or *nolo contendere* before the imposition of sentence, but leaves to the sound discretion of the trial judge the decision whether a defendant has met his burden of showing adequate cause

3. Rule 11, Federal Rules of Criminal Procedure:

A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

As amended Feb. 28, 1966, Eff. July 1, 1966.

for permitting withdrawal of the plea, as we have held in a number of cases. United States v. Valdez, 5 Cir. 1971, 450 F.2d 1145; United States v. Arredondo, 5 Cir., 1971, 447 F.2d 976; Kirshberger v. United States, 5 Cir. 1968, 392 F.2d 782. We have adhered nonetheless to the general principle that Rule 32(d) should be construed liberally in favor of the accused when a motion is made to withdraw before sentence is imposed. Kirshberger v. United States, supra, at 784, and cases cited therein. The right of jury trial is involved and that right has long held a favored place in our law.

As the rule itself implies, there is a different standard for granting the motion prior to sentencing as compared to after sentencing. Wrote Chief Judge Haynsworth of the Fourth Circuit in United States v. Roland, 4 Cir. 1963, 318 F.2d 406, 409:

> "Such motions before sentence should be allowed with great liberality, but after judgment and the imposition of the sentence, the Rule gives the Court the power to grant such a motion if such action appears to be necessary 'to correct manifest injustice'".

We do not have a case where a defendant based his request to change his plea on a mistake of fact, e. g. *Arredondo,* or on mere indecisiveness, e. g. *Valdez,* or on an intuitive skepticism as to whether a conviction could be obtained, or for alleged promises that remained unfulfilled when the defendant earlier assured the court that no promises had ever been made, e. g. *Kirshberger.* In these and similar situations reversals of the trial judge's discretion are rare. Rather, this appeal goes to right of the district court even to hear the case. If the *Rewis* holding governs appellants' factual situation then their offenses were beyond the limits of the criminal jurisdiction which Congress intended to confer on the federal courts. The Legislative history of Section 1952, commonly referred to as the Travel Act, has been in-

terpreted to mean that sensitive federal-state relationships were not to be altered and that essentially minor state offenses were not to be transformed into federal felonies and thus over-extend federal police resources. The purpose of Congress, instead, was to reach criminal activities extending beyond the borders of a single state by providing federal assistance in situations where local law enforcement is likely to prove ineffective. *Rewis,* supra; United States v. Altobella, 7 Cir. 1971, 442 F.2d 310; United States v. McCormick, 7 Cir. 1971, 442 F.2d 316. In short, if this interpretation of Section 1952 fits appellants' situation, they were refused their expressed desire to withdraw their plea of *nolo contendere* and to plead not guilty and thereupon sentenced for acts which may not have constituted a federal offense.

While guilty or *nolo contendere* pleas are generally viewed as a waiver of non-jurisdictional defects, including the right to assert certain constitutional rights, "[f]or this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)." McCarthy v. United States, 1969, 394 U. S. 459, 466, 89 S.Ct. 1166, 1171, 22 L. Ed.2d 418. In De Leon v. United States, 5 Cir. 1966, 355 F.2d 286, 289, we said:

> "Courts must always be diligent to ascertain whether a plea of guilty was understandingly made, and when it appears *before sentencing* that such a plea was entered by a defendant who did not understand the charges or acted as a result of mistake, it is an abuse of discretion not to permit the plea to be withdrawn." (Emphasis in the original.)

When the *Rewis* interpretation of the Travel Act was brought to the attention of the trial judge, it should have been clear that the admitted facts may not have been sufficient to warrant a federal charge of violation of Section

1952. There was no admission as to the nature or extent of appellants' reliance on the use of the interstate facility in aid of their unlawful conduct. *Altobella,* supra, holds that the use of the interstate collection process for checks must be more than "purely incidental" to appellants', illegal state activities. 442 F. 2d at 315. Here, prior to sentencing, appellants called to the district court's attention a Supreme Court decision which may substantially affect their legal rights, but was unknown to them— because not yet rendered—at the time they pleaded *nolo contendere.* This did not constitute such an "intentional relinquishment or abandonment of a known right or privilege" as to overcome the presumption against waiver of fundamental constitutional rights.

Upon a jury trial appellants may be able to persuade the court as a matter of the law that they come under the *Rewis* protective umbrella. Failing that, they would be entitled to have the question submitted for jury determination under appropriate instruction. At the least they were entitled to try to make a record in this respect.

Appellants raised the issue of the extent of coverage of Section 1952 at the earliest possible time after that defense became available to them, before sentence was actually imposed. There is no indication that the Government has been substantially prejudiced by reliance upon their pleas. We hold therefore that appellants should have been permitted to withdraw their pleas of *nolo contendere* and to go to trial before a jury on pleas of not guilty. The district court is reversed for its refusal to permit this to be done.

The indictment is not susceptible to outright dismissal at this stage because the facts have not been sufficiently developed to determine the extent and significance of the crossing of state lines to the furtherance of the operations of the illegal gambling casino. The gambling operation in *Rewis* was frequented by out-of-state bettors; there was no evidence that the operators had themselves used an interstate facility to further their activities. However, the Supreme Court said, "Still, there are cases in which federal courts have correctly applied Section 1952 to those individuals whose agents or employees cross state lines in furtherance of illegal activity. . . ." 91 S.Ct. at 1060. The Seventh Circuit in *Altobella,* 442 F.2d at 313, found there was "no evidence in the record of any actual or intended use of the mails by appellants with the single exception of their acceptance of their victim's offer to cash a check for $100 at his hotel." Thus, it is for the jury to weigh the number of incidents proved in which appellants employed interstate commerce to advance illegal activities and the degree of their significance to the operation of the casino. When those facts are developed, the trial court may be able to determine as a matter of law that no offense is made out under Section 1952, or it may be necessary to submit this issue to the jury.

Appellants raise several other grounds of appeal, none meritorious. We make brief reference to two of these contentions for the guidance of the trial court in the event of re-trial.

The claim is made that prejudicial error occurred in the denial below of motions to suppress statements given by appellants Sam Presley, Sr., Machefsky and Charles Ray Presley to agents of the Internal Revenue Service.

 Machefsky and Charles Ray Presley appeared in response to administrative subpoena, under Sec. 7602 of the Internal Revenue Code of 1954, to testify as to Sam Presley, Sr.'s tax liability. The district court correctly held on the evidence produced that the statements were given voluntarily and in the presence of retained counsel. They were not misled as to the nature of the investigation. Donaldson v. United States, 1971, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580, United States v. Tonahill, 5 Cir.

1970, 430 F.2d 1042, 1044–1045. Nor were the agents under duty to warn these appellants of the possibility of their prosecution under Section 1952 when the possible use of interstate facilities became apparent during the interview. Hoffa v. United States, 1966, 385 U.S. 293, 303, 87 S.Ct. 408, 17 L.Ed.2d 374. United States v. Prudden, 5 Cir. 1970, 424 F.2d 1021, 1025–1033; United States v. Stribling, 6 Cir. 1971, 437 F.2d 765, 772; United States v. Squeri, 2 Cir. 1968, 398 F.2d 785, 788.

As to Sam Presley, Sr. he attended the August 11 meeting of his own volition, accompanied by his accountant, as he had several other meetings with Internal Revenue Service agents earlier. He was not under compulsion either to attend or to make any statement. No Fifth Amendment *Miranda* situation was present. See United States v. Prudden, supra, 424 F.2d at 1025–1031.

Appellants further complain on Sixth Amendment speedy trial grounds, of the more than four years delay occurring between the date alleged as the end of the conspiracy as well as the dates of the substantive offenses, and the date of indictment.

This point is not well taken, inasmuch as no attempts were ever made by appellants to seek speedier trial, no prejudice is shown from delay, and the offenses occurred well within the statute of limitations. Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101; United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; Kroll v. United States, 5 Cir. 1970, 433 F.2d 1282, 1286, cert. denied 1971, 402 U.S. 944, 91 S.Ct. 1616, 29 L.Ed.2d 112; United States v. Seay, 5 Cir. 1970, 432 F.2d 395, 403; United States v. Grayson, 5 Cir. 1969, 416 F.2d 1073, 1076–1077, cert. denied, 396 U.S. 1059, 90 S.Ct. 754, 24 L.Ed.2d 753 (1970); Bruce v. United States, 5 Cir. 1965, 351 F.2d 318, cert. denied, 384 U.S. 921, 86 S.Ct. 1370, 16 L.Ed.2d 441 (1966).

Reversed.