**UNITED STATES of America, Appellee,**

v.

**Joseph Vincent TRUGLIO, Appellant.**

**No. 73-1708.**

United States Court of Appeals, Fourth Circuit.

Submitted June 28, 1973.

Decided March 14, 1974.

---

John W. Cooper and Frank Cuomo, Jr., of Pinsky, Mahan, Barnes, Watson, Cuomo & Hinerman, Wellsburg, W. Va., on brief for appellant.

Paul C. Camilletti, U. S. Atty., and M. Blane Michael Special Asst. U. S. Atty., on brief for appellee.

Before BOREMAN, Senior Circuit Judge, and BUTZNER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

Upon his guilty plea Joseph Vincent Truglio was convicted of a violation of Title 18, Section 641 of the United States Code. Appealing his conviction Truglio challenges the action of the district court in denying his motion to withdraw his guilty plea which motion was filed shortly after the plea was entered and prior to sentencing.[1]

Truglio was named in a two count indictment, together with four others, Joseph Andrew Bonacci, Jr., Karen Sue Bonacci, Willie Harris and Franklin Victor Tesack. The first count charged the defendants with the unlawful concealment and possession of stolen postal money orders and stamps in violation of 18 U.S.C. § 641; and the second count charged them under 18 U.S.C. § 371 with a conspiracy to commit the substantive offense. Each of the defendants entered a plea of not guilty to both counts. It appears that after the indictment was returned all of the defendants except Truglio retained one Frank Pietranton as their counsel. Initially, Truglio had employed an attorney, George Loucas, to represent him and Loucas called upon Pietranton to assist him in the representation of Truglio along with the other defendants. Loucas died shortly thereafter and Pietranton assumed the sole responsibility of representing all five of the defendants. A joint jury trial of the defendants began on March 20, 1972, and on that and the following day the Government presented the evidence of twelve witnesses in its case in chief. On the morning of March 22nd prior to resumption of the trial Pietranton and the United States Attorney entered into discussions relative to the possibility of an agreed disposition of the case, and negotiations between the attorneys continued for some three hours, during which period Pietranton conferred with the defendants from time to time. Counsel kept the court advised of their progress and the jury was held in the jury room pending the outcome of the negotiations.

A proposed agreement for disposition of the case was finally reached between counsel and was discussed with the court in camera. Under the agreement Truglio and Tesack were to enter guilty pleas to count one of the indictment and the defendant, Karen Sue Bonacci, was to enter a guilty plea to a misdemeanor under 18 U.S.C. § 641. The charges against Joseph Andrew Bonacci and Willie Harris were to be dismissed and the Government further agreed that ultimately, subsequent to sentencing, the charges under count two against Truglio and Tesack and counts one and two against Karen Sue Bonacci were to be dismissed. Additionally, the Government agreed to recommend to the court that a term not to exceed a maximum of five years be imposed upon Truglio and Tesack. The court made no commitment to counsel concerning this arrangement, but indicated that he would be disposed to take the pleas and discuss the proposed disposition with the defendants.

Thereafter, the defendants were called into the courtroom and the United States Attorney stated on the record the proposed disposition of the case which had been discussed with the court. Following the statement by the United States Attorney, Pietranton stated to the court that he had advised both Tesack and Truglio that a plea of guilty appeared to be desirable; that he further had advised them that the proposed agreement was not binding upon the court except that the Government would recommend that the commitment of

1. Following a hearing, the district court denied Truglio's motion by an order entered on June 6, 1972. Truglio appealed that order but the appeal was dismissed by this court when it came to our attention that there was no appealable order since Truglio had not at that time been sentenced. United States v. Truglio, 475 F.2d 1401 (4 Cir. 1973).

Truglio and Tesack not exceed a maximum of five years. In the course of his remarks Pietranton stated:

"I think that Mr. Tesack has indicated finally to me that he would tender his plea. And that Karen Sue Bonacci will tender her plea to a misdemeanor. And Mr. Truglio has frankly indicated once that he would, and another time that he would not. At this juncture, I am not absolutely sure what his intention is. But I think that he has a right, of course, your Honor to make up whatever decision he likes but I want to be certain that there are no hidden deals here, or that I have represented to them something which is not true. I want them to be absolutely certain that they understand fully what I represented to them. I think that they have and do understand fully what I have represented to them.

"I don't know about Mr. Truglio. He will be called on to speak if he desires. I don't know yet what you want to do."

This last remark of Pietranton was apparently addressed to Truglio who made no response, and the United States Attorney then made the following statement of his position:

"In view of the announcement by Mr. Pietranton. To further clarify the position of the Government, we will take the action that I have suggested only in the event the three guilty pleas come in as I outlined them in my previous statement.

"If any one of the Defendants vary from what counsel for the defense and myself anticipate, then the Government will not dismiss the indictment. It will not cease the prosecution against all five Defendants and the Government will be prepared to continue with the trial that we have held the jury for, if that would suit the Court's convenience."

The defendants were then called to the bar of the court and the United States Attorney tendered the Government's information charging Karen Sue Bonacci with a misdemeanor. The court advised Mrs. Bonacci relative to the charge in the information, took her plea of guilty thereto, and then questioned Tesack with respect to his plea to count one of the indictment after which Tesack entered a plea of guilty. Finally, the district judge directed his attention to Truglio relative to count one of the indictment and inquired of his plea. Truglio responded that he pled guilty.

Thereafter the court addressed his remarks jointly to Mrs. Bonacci, Tesack and Truglio, advising them of their right to continue to have their guilt or innocence determined by the jury stating, however, that if their pleas of guilty should be accepted their guilt would be resolved thereby and "the case would come to an end." The court further stated the substance of the respective charges against them and inquired whether, in fact, they had committed the offense to which they had entered their pleas and all three stated that they had. The court also asked the defendants if any promises or threats had caused them to enter their guilty pleas and each answered in the negative. Following this colloquy the court accepted the pleas, and the defendants were advised that final disposition of their cases would be deferred until the court had the benefit of presentence investigations and reports on each of them. Thereupon the United States Attorney moved to dismiss the indictment against Joseph Andrew Bonacci, Jr., and Willie Harris, and further represented to the court that the remaining charges against Karen Sue Bonacci, as well as Tesack and Truglio, would be dismissed after the three defendants had been sentenced. These proceedings and the action of the court were reflected in an order subsequently entered in the case.

On the following day, March 23rd, Truglio consulted with his present counsel relative to the possibility of withdrawing his guilty plea, and on April 7, 1972, counsel submitted a motion for withdrawal of the plea on the grounds

that it had been entered "involuntarily, unintelligently, improvidently without the proper advice of counsel and under coercion and duress." Particularizing, the motion states that at the time he entered his plea Truglio's faculties were impaired by reason of his being under the influence of drugs which he had taken as prescriptive medication for a severe diabetic condition; that he was subject to extensive pressure and duress during the plea negotiations and was coerced by the threat that his codefendants would go to prison unless he entered the plea, and that the Government's insistence on a "package deal" for all five of the defendants was used as leverage which influenced Truglio to sacrifice his rights in order to enable his codefendants to obtain the benefit of the plea bargain. Finally, the motion asserts that the coercive conduct of Pietranton during the negotiations denied Truglio the effective assistance of counsel.

The Government filed its answer to the motion and a hearing was conducted on May 31, 1972. Truglio was the only witness who testified at the hearing, but in acting on the motion the court also considered the record of the trial and the plea proceedings as well as certain affidavits which had been filed. At the conclusion of the hearing the district judge made oral findings from the bench in which he stated that while Truglio appeared somewhat "sullen and sulky" at the time he entered his plea, nevertheless he was "alert and very well possessed of his faculties." The court then referred to the transcript of the proceedings on March 22, 1972, and upon this review of the record concluded that Truglio's plea had been entered voluntarily and denied the motion for withdrawal thereof.

■ In United States v. Tabory, 462 F.2d 352, 354 (4 Cir. 1972), in considering the questions incident to a motion for withdrawal of a plea of guilty prior to sentencing, Judge Butzner stated the applicable principles as follows:

"Before sentence, a trial court may allow withdrawal of a plea of guilty for any fair and just reason. Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). We have said that leave to withdraw before sentencing normally should be allowed. United States v. McGirr, 434 F.2d 844, 847 (4th Cir. 1970); United States v. Roland, 318 F.2d 406, 409 (4th Cir. 1963) (dictum). But this dispensation should not be as freely granted when the government has been prejudiced by reliance on the defendant's guilty plea. United States v. Stayton, 408 F.2d 559, 561 (3d Cir. 1969); see 2 C. Wright, Federal Practice and Procedure § 538 (1969). Then the trial court must weigh the defendant's reasons for seeking to withdraw his plea against the prejudice which the government will suffer. On appeal, the court's denial of the motion will be overturned only for abuse of discretion. United States v. Ford, 363 F.2d 375, 377 (4th Cir. 1966); United States v. Guerini, 296 F.2d 33, 34 (4th Cir. 1961)." (Footnote omitted).

Unquestionably, in the present case the dismissal of the charges against Bonacci and Harris coupled with the abortion of the trial after two days of evidence constituted substantial prejudice to the Government and, accordingly, it is necessary to determine whether Truglio's reasons for seeking to withdraw his plea are sufficient to outweigh this prejudice.

■ We have little difficulty with respect to Truglio's allegation that he was not in control of his faculties at the time he entered his plea due to the influence of the medication he had taken. In order to prevail on this point, it would be necessary for Truglio to demonstrate "that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." United

States v. Malcolm, 432 F.2d 809, 812 (2 Cir. 1970). Our review of the record convinces us the court's finding that Truglio was "alert and very well possessed of his faculties" at the time he entered his plea was correct. However, Truglio's charges with respect to the conduct of his counsel and the coercive atmosphere attendant upon his plea presents a more serious question.

■■■ In his bench decision on the motion the district judge focused his attention almost exclusively upon a review of the record in the context of the requirements of Rule 11, Fed.R.Crim.P., and as heretofore stated, it was on this basis that he concluded Truglio's plea was voluntary. However, it is clear from the grounds assigned and the evidence presented at the hearing that disposition of Truglio's motion required something more than a mere review of the plea proceedings measured by the bare bones requirements of Rule 11. While a court's inquiry pursuant to the Rule may often be appropriately dispositive on the issue of voluntariness, it is not necessarily conclusive; and the fact that the defendant in open court has stated at the time of his plea that it was not coerced, while evidential on the issue, does not foreclose further inquiry. *See* Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973); Walters v. Harris, 460 F.2d 988 (4 Cir. 1972); United States v. Rundle, 221 F.Supp. 1003 (E.D.Pa.1963); United States v. Tateo, 214 F.Supp. 560 (S.D.N.Y.1963).

First of all, we feel that under the circumstances present here the district judge should have conducted a much more searching inquiry on the aspect of voluntariness prior to acceptance of the guilty pleas, especially with respect to Truglio. While Rule 11, of course, requires the district judge to address the defendant personally and determine that the plea is voluntarily entered with a full understanding of the nature of the charge and the consequences of his plea, it has often been observed that no particular litany is prescribed and "[t]he nature of the inquiry * * * must necessarily vary from case to case." *See* McCarthy v. United States, 394 U.S. 459, 467 n. 20, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969).

■■ Here the court knew that the plea bargain had been negotiated by one attorney who represented all five of the defendants, and while representation of codefendants by the same attorney is not in itself tantamount to the denial of effective assistance of counsel, "[t]he very fact that two or more co-defendants are represented by the same counsel should alert a trial judge and cause him to inquire whether the defenses to be presented in any way conflict." United States v. Lovano, 420 F.2d 769, 772 (2 Cir. 1970). Additionally, the caveat of Pietranton's statement in open court indicating Truglio's equivocal position on the proposed plea was sufficient to presage a serious question of voluntariness. These circumstances, in our opinion, called for an in-depth inquiry by the court to determine that Truglio's guilty plea was a voluntary act on his part, free from any coercive influence resulting from the multiple representation by Pietranton or the nature of the proposed bargain itself. A guilty plea has been described as "perhaps the most devostating waiver possible under our Constitution,"[2] and the obligation of the trial court to monitor the constitutional rights of a defendant "is not to be discharged as a mere matter of rote, but with sound and advised discretion." Patton v. United States, 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930).

■ Aside from the inadequacy of the plea inquiry, we find substantial support for Truglio's position in the record of the hearing on the motion held on May 31, 1972. On that occasion, Truglio testified that on the morning of

---

2. Stewart, J., concurring, Dukes v. Warden, 406 U.S. 250, 258, 92 S.Ct. 1551, 1555, 32 L.Ed.2d 45 (1972).

March 22nd Pietranton advised the five defendants that "they had to plead guilty" and initially all five rejected this suggestion. Later, Pietranton returned and informed them that one charge would be dismissed and the other charge would be reduced to five years if guilty pleas were entered. There apparently was further discussion and again the attorney left the room, finally returning and advising the defendants of the agreement which had been reached with the United States Attorney, stating "that the girl would get probation on a misdemeanor and Frank Tesack and myself would have to plead guilty to five years."

Truglio testified that he repeatedly told his attorney he did not want to plead guilty but that Pietranton was insistent that he do so and at one point threatened to withdraw as his counsel if Truglio did not cooperate with the plea arrangement. Pietranton had further stated that if he failed to go along with the proposal all five defendants would go to the penitentiary, and that unless he plead guilty he would be responsible for Karen Bonacci getting ten years in the penitentiary instead of probation.

The Government did not call Pietranton as a witness at the hearing on the motion, and Truglio's testimony concerning the coercive and abrasive nature of their discussions during the course of the plea negotiations stands unrefuted. We do not necessarily condemn Pietranton or suggest any bad faith on his part in the conduct of the negotiations. However, as stated in Glasser v. United States, 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680, (1942), "irrespective of any conflict of interest, the additional burden of representing another party may considerably impair counsel's effectiveness." It is quite understandable

that having obtained what he considered to be a favorable bargain for all of the defendants Pietranton would be somewhat more than reluctant to see the bargain collapse in its entirety by Truglio's insistence that the trial continue.

As we have previously noted, the representation of codefendants by the same attorney is not necessarily a denial of effective assistance of counsel, and concededly in the context of the Sixth Amendment "[t]here must be some showing of a possible conflict of interest or prejudice, however remote, before a reviewing court will find the dual representation constitutionally defective." Walker v. United States, 422 F.2d 374, 375 (3 Cir. 1970). In Sawyer v. Brough, 358 F.2d 70 (4 Cir. 1966), we had occasion to apply the principle of Glasser v. United States, *supra,* with the following observation:

> "The salient fact remains that divergent interests did exist, and therefore an opportunity was presented for the impairment of Sawyer's right to the unfettered assistance of counsel. It is not necessary that Sawyer delineate the precise manner in which he has been harmed by the conflict of interest; the possibility of harm is sufficient to render his conviction invalid." p. 73.

Upon the record before us, we find that Truglio's interests were so commingled with those of his four codefendants that it was impossible for Pietranton to devote his full efforts on behalf of Truglio. Documented as it is, this was a denial of effective assistance of counsel which clearly outweighs the prejudice which the Government will suffer, and it was an abuse of discretion by the trial court to deny Truglio's motion.[3]

Accordingly, we reverse Truglio's conviction and remand this case to the dis-

3. Truglio received a sentence of six years which, of course, exceeded the term of the plea bargain. This in itself might be a sufficient basis for withdrawal of the guilty plea. *See* United States v. Gallington, 488 F.2d 637 (8 Cir. 1973); United States ex rel. Culbreath v. Rundle, 466 F.2d 730 (3 Cir. 1972). *Cf.* ABA Standards, Pleas of Guilty (Approved Draft, 1968) Sec. 3.3(b); Proposed Amendments to the Federal Rules of Criminal Procedure, 52 F.R.D. 409, 415. However, in our disposition of the present case it is unnecessary that we address ourselves to that question.

trict court with directions to vacate Truglio's guilty plea and permit him to plead anew to the indictment.

Reversed and remanded.