UNITED STATES of America, Appellee,

v.

**Michael A. STRAUSS, Appellant.**

**No. 76–1957.**

United States Court of Appeals, Fourth Circuit.

Argued July 14, 1977.

Decided Oct. 13, 1977.

Roger E. Zuckerman, Washington, D. C. (Harry P. Hart, Alexandria, Va., on brief), for appellant.

Mervyn Hamburg, Atty. U.S. Dept. of Justice, Washington, D. C. (William B. Cummings, U. S. Atty., Alexandria, Va., Judith Ann Denny, Atty. U.S. Dept. of Justice, Washington, D. C., on brief), for appellee.

Before WINTER and BUTZNER, Circuit Judges, and ALEXANDER HARVEY, II, District Judge, United States District Court for the District of Maryland, sitting by designation.

BUTZNER, Circuit Judge:

Michael A. Strauss assigns error to the district court's refusal to allow him, before sentencing, to withdraw a plea of guilty to charges of mail fraud and conspiracy to commit mail fraud. He contends that circumstances surrounding the entry of his plea constitute a fair and just reason for permitting him to withdraw it under Federal Rule of Criminal Procedure 32(d)[1], and that the government has shown no prejudice resulting from withdrawal that outweighs his interest in receiving a trial. We affirm because we conclude that the district court did not abuse its discretion in refusing Strauss's request.

## I.

Strauss and two others were indicted by a grand jury on March 4, 1976, on nine charges of mail fraud and a tenth count of conspiracy. The defendants were arraigned on March 15, 1976, and trial was set for Monday, April 26, 1976. At this time

---

1. Federal Rule of Criminal Procedure 32(d) provides:

Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Strauss and another defendant, Rodney S. Budwey, were represented by Robert H. Mackenzie, an attorney from Florida who was to be paid by Strauss's father. Mackenzie appeared at the arraignment, corresponded with the United States attorney's office concerning discovery, and prepared motions on behalf of Strauss and Budwey. Primarily because of a dispute about fees, Mackenzie soon ceased to prepare the defense, refused to sign the motions, and finally told Strauss and the court that he wished to withdraw from the case. Benjamin N. A. Kendrick, the local counsel associated by Mackenzie, expressed unwillingness to assume the role of lead trial counsel.

By the time of a hearing on April 14, Strauss felt certain that Mackenzie had abandoned the case even though he had not officially been relieved of his responsibility. Representing that he was now indigent, Strauss asked the court to appoint new counsel and to continue the trial long enough for him to prepare. The court denied the motion and admonished Kendrick to be prepared to defend Strauss if Mackenzie failed to appear.

On April 16, Mackenzie did not appear at a motions hearing, but sent a telegram to the court asking to be relieved as counsel. Although *pro se* motions were entertained on behalf of Strauss, no attorney argued them orally. Following the hearing Kendrick told Strauss that he could not prepare for trial on the 26th and would not, in any event, act as lead trial counsel, since he had agreed only to serve as local counsel.

On Wednesday, April 21, Craig T. Sawyer entered his appearance as lead trial counsel for Strauss. A social relationship with Strauss and some prior professional contacts had given Sawyer fragmentary knowledge of the issues in the case, but his participation had been limited to serving as bond custodian for another defendant. The court again denied requests for a delay of the trial which was scheduled to begin five days later.

Sawyer soon met with the prosecutor, discussed the possibility of a plea agreement, and received a large quantity of discovery material. He worked through the night and the next day going over the documents relating to the case and doing legal research, getting only about an hour's sleep. Having concluded that Strauss ought to accept a plea agreement, Sawyer began a series of conversations with Strauss designed to convince him of this. While Strauss expressed interest at times, he more frequently insisted on going to trial, and he maintained that he had done nothing morally wrong, that he had had no intent to steal from anyone.

Sawyer worked through Thursday night reviewing the case. On Friday morning he and Kendrick appeared at a hearing on Mackenzie's still-pending motion to withdraw as counsel for Strauss. The court allowed the withdrawal after reprimanding Mackenzie for the predicament in which he had left his client. Although both Sawyer and the court-appointed counsel for Budwey reiterated that they felt unprepared for trial on Monday, the court refused a continuance.

Following this hearing, Sawyer and Kendrick again discussed the possibilities for a plea agreement with the prosecutor and conferred intermittently with Strauss by telephone. This series of communications culminated in a call aptly described by both parties as "acrimonious," during which Sawyer was repeatedly abusive and profane in his attempts to convince Strauss to enter a guilty plea.[2] Nevertheless, Strauss insisted on going to trial. In a final attempt to change his mind, Sawyer and Kendrick went to Strauss's residence early that afternoon, and after further discussion, they prevailed. The attorneys then drove Strauss to the courthouse, where the trial court accepted a plea of guilty to one count of mail fraud and the conspiracy count.

Budwey, represented by different counsel, also entered a plea later on Friday, and

---

2. Strauss made a recording of this conversation without Sawyer's knowledge. On Strauss's motion the district court admitted both the tape and transcript as evidence in the hearing on the motion to withdraw the plea.

the remaining defendant was found guilty *in absentia* on all counts of the indictment in a one-day trial on Monday.

On May 19, 1976, before sentencing, Strauss's present attorneys filed a motion to permit withdrawal of his guilty plea. At the day-long evidentiary hearing on the motion, the government refused to accept a proffer of Strauss's evidence and the court expressed a preference for hearing live testimony. Although Strauss was present, he did not testify, and indeed he has never personally explained his reasons for seeking withdrawal of his plea. His evidence in support of the motion consisted of the testimony of his wife and Sawyer and several exhibits.

Sawyer testified in detail about the foregoing events. He asserted that the short time between his appearance and the trial date curtailed his ability to investigate the case. He testified that he had received approximately two hours of sleep between Wednesday afternoon, when he entered the case, and Friday afternoon, when the plea was taken. He also testified that, as of Friday afternoon, he had not had time to interview any of the 18 or more government witnesses scheduled to testify at the trial, and that he had not expected to be able to interview any until the trial began.

Sawyer testified that he had assured Strauss that he could conduct a constitutionally adequate defense if they went to trial on Monday. He further explained, however, that these assurances were in part based on a realistic assessment of the situation: no continuance was available, and he felt that he was the only attorney who was at all prepared to defend Strauss. But even as he asserted this, Sawyer emphasized his dissatisfaction with the limited time for preparation.

Sawyer's testimony revealed other factors contributing to his decision to press Strauss to accept a plea agreement. He had reason to fear that Strauss was intending to perjure himself, and he also had cause to believe that Strauss was tampering with documents that were to be turned over to the government under a discovery motion. Finally, he suspected that Strauss was manipulating both his lawyers and the court in order to delay a final disposition.

Sawyer also described a telephone conversation with Strauss that occurred seven days before the motion to withdraw the plea was filed. At that time Strauss said that the motion was going to be made, not because of any dissatisfaction with Sawyer's representation, but because his new attorneys thought that a lighter sentence could be procured by going to trial.

The district judge denied Strauss's motion to withdraw his guilty plea. In his opinion from the bench, he fully canvassed Strauss's reasons for seeking withdrawal and the prejudice that the government would suffer. He concluded that Strauss presented no substantial reasons outweighing the prejudice to the government.

## II.

This circuit has enunciated the principles that are to guide consideration of a Rule 32(d) motion to withdraw a plea before sentencing. A trial court may allow withdrawal of a plea for any fair and just reason. Withdrawal should be permitted if the plea has been "unfairly obtained or given through ignorance, fear or inadvertence." *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). We have held that withdrawal before sentencing normally should be allowed. *United States v. Truglio,* 493 F.2d 574, 578 (4th Cir. 1974); *United States v. Tabory,* 462 F.2d 352, 354 (4th Cir. 1972); *United States v. McGirr,* 434 F.2d 844, 847 (4th Cir. 1970); *United States v. Roland,* 318 F.2d 406, 409 (4th Cir. 1963) (dictum). This policy is justified because of the public interest in protecting an accused's right to a jury trial. *Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir. 1963). One commentator has said that the "sounder view, supported both by the language of the rule and by the reasons for it, would be to allow withdrawal of the plea prior to sentencing unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." 2 C. Wright, Federal Practice

and Procedure § 538, at 474–75 (1969). When the government has been prejudiced, the trial court must weigh the accused's reasons for changing his plea against the prejudice the government will suffer. *United States v. Truglio,* 493 F.2d 574, 578 (4th Cir. 1974); *United States v. Tabory,* 462 F.2d 352, 354 (4th Cir. 1972). On appeal, denial of the motion should be sustained unless the trial court has abused its discretion. *United States v. Ford,* 363 F.2d 375, 377 (4th Cir. 1966).

### III.

■ In *United States v. Barker,* 168 U.S. App.D.C. 312, 514 F.2d 208, 222 (1975), Judge Wright observed that the "most common form of prejudice is the difficulty the Government would encounter in reassembling far-flung witnesses in a complex case, but prejudice also occurs where a defendant's guilty plea removed him from an ongoing trial of co-defendants, who were then found guilty." The government's position here markedly resembles the situation Judge Wright described. Although the trial of Strauss and his codefendant was not in progress when Strauss pled guilty on Friday afternoon, it was scheduled for the following Monday, and the government had completed its preparations. It assembled 18 witnesses from several states, including California, Florida, Georgia, Maryland, Mississippi, New York, and North Carolina, for the Monday trial, which was conducted as scheduled. Consequently, the government would suffer prejudice if it had to reassemble its witnesses and prepare once again for the trial of the case. *Cf. United States v. Barker,* 168 U.S.App.D.C. 312, 514 F.2d 208, 222 (1975); *United States v. Truglio,* 493 F.2d 574, 578 (4th Cir. 1974); *United States v. Tabory,* 462 F.2d 352, 354 (4th Cir. 1972).

### IV.

We must therefore examine Strauss's reasons for seeking to withdraw his plea of guilty and weigh them against the prejudice to the government. The factors to be considered are: (A) the court's Rule 11 inquiry at his arraignment, *United States v.* *Tabory,* 462 F.2d 352, 354 (4th Cir. 1972); (B) the quality of the representation he received, *United States v. Truglio,* 493 F.2d 574, 580 (4th Cir. 1974); (C) his mental condition, *United States v. Truglio,* 493 F.2d 574, 578 (4th Cir. 1974); and (D) whether he asserted his innocence, *United States v. Barker,* 168 U.S.App.D.C. 312, 514 F.2d 208, 220 (1975).

### A.

Before accepting Strauss's plea of guilty, the district judge conducted an exceptionally thorough Rule 11 examination. He made sure that Strauss understood the terms of the plea bargain, and he carefully explained the charges in the two counts on which Strauss was changing his plea. In this connection he ascertained that Strauss understood that the government had to prove beyond a reasonable doubt that he had engaged in the scheme to defraud voluntarily, intentionally, and with the specific intent to do something that the law forbids. He explained to Strauss that the intent to defraud meant the intent to deceive or cheat. Strauss assured the court that he understood these elements of the charge.

Aware that Strauss had recently obtained new counsel who had unsuccessfully sought a continuance, the district judge asked Strauss if he had told his attorneys all the facts about the cases. After Strauss said that he had, the judge remarked, "There has been some controversy about whether they would have time to absorb all there is to absorb about these cases." Strauss responded, "Well, since they came into the case, Your Honor, they have worked just as diligently as they could to comprehend everything as it happened." Pressing Strauss on this point, the court asked:

Again with reference to the time of the trial and your difficulties with counsel and your request for more time and your request, I believe, to have some of your counsel withdrawn, is any of that causing you to plead guilty?

MR. STRAUSS: No, Your Honor.

THE COURT: Any fear that the case may not be adequately presented in your behalf causing you to plead guilty?

MR. STRAUSS: No, Your Honor.

In addition to these specific inquiries, the court ascertained that Strauss was satisfied with the representation that he received and that nobody had made any promises or threats to induce him to plead guilty.

The court did not accept Strauss's plea until the government established a factual basis for it by presenting a detailed resume of the evidence. The government showed that, using the mail, Strauss and his codefendants obtained more than a million dollars by their fraudulent scheme. They formed an insurance agency and applied to two insurance premium finance companies for loans. In each application they represented that one of their clients who desired to purchase an insurance policy had made a down payment but needed financing for the balance of the premium; that a policy had been issued; that the proceeds of the loan would be used to pay the premium; and that the loan would be secured by the unearned premium. The evidence disclosed that there were no insurance policies or down payments, and the proceeds of the loans were diverted to Strauss and his codefendants instead of being used to pay premiums.

In response to further questions from the court, Strauss said that he did not disagree with the outline of the evidence and that he made no claim that he was innocent of the charges.

The transcript of Strauss's arraignment discloses that the trial judge fully complied with the requirements of Rule 11. Furthermore, the transcript indicates that Strauss's plea was entered voluntarily and intelligently. In short, nothing in the record of the arraignment supports Strauss's motion to withdraw his plea.

### B.

During the five week interval between the initial and subsequent arraignments Strauss was represented by privately re-tained lawyers. Sawyer was a friend who had gained some previous familiarity with the case. He entered his appearance five days before trial, becoming at that time associated with another attorney who had been retained earlier. Although Sawyer would have preferred a continuance, he testified that he was prepared to afford Strauss a constitutionally adequate defense. Moreover, by diligent study Sawyer became familiar enough with the case to recognize that it was to Strauss's advantage to plead guilty to some of the charges in return for the dismissal of others.

Sawyer testified that he advised Strauss to plead guilty because in his opinion Strauss was guilty and because he was concerned that Strauss would perjure himself if the case went to trial. For these reasons he believed an acceptable plea bargain would best serve Strauss's interests. While Sawyer's conversations with Strauss were indeed sometimes vulgar, this reflected, as the trial judge observed, his intensity of feeling and his friendship with Strauss rather than any wrongful intention to coerce him. Strauss himself did not steadfastly insist on going to trial. On one occasion, he told Sawyer to try to obtain assurances for a sentence no longer than six years.[3]

At the extensive hearing on the motion for withdrawal, Strauss presented no evidence that his lawyer's advice to plead guilty was wrong or that it was not "within the range of competence demanded of attorneys in criminal cases." *See McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Even now, Strauss does not attack the summary of the evidence presented by the government as the basis in fact for his plea. Tested by this summary, Sawyer's advice was sound.

Furthermore, Strauss has never testified in refutation of the assurances he gave at the Rule 11 hearing concerning the adequacy of his counsel. Nor has he ever contested his attorney's conclusion that his proba-

---

**3.** Strauss was sentenced to five years imprisonment on each of the two counts to which he pled guilty, the sentences to run concurrently.

 

ble perjury would lead to disaster if he went to trial. We therefore conclude that the record does not support Strauss's claim that he should be allowed to withdraw his plea because he did not receive effective representation.

### C.

The record also presents no ground for holding that Strauss lacked the mental capacity to voluntarily and intelligently enter his plea. He has a college education. Although he is an alcoholic, he was not under the influence of intoxicants when he was arraigned.

Nearly a month after his arraignment Strauss consulted a psychiatrist who observed that he was under considerable stress.[4] Relying largely on the history related by Strauss and his wife, the psychiatrist expressed the opinion that Strauss's emotional state prompted him to enter a plea which did not express his intent before or after his arraignment. His report, however, stops short of saying that Strauss did not voluntarily enter the plea when he was arraigned. Indeed, the psychiatrist noted that Strauss was "certainly able to participate in his own defense."

The trial judge found that Strauss was "alert, lucid, [and] apparently comprehending" when he entered his plea. Since these findings are adequately supported by the record, Strauss's mental condition affords no reason for withdrawing his plea.

### D.

Because Strauss did not testify at the hearing on his motion, he must base his claim to innocence on a tape recording of a conversation with Sawyer that was introduced into evidence and on Sawyer's testimony. Strauss told Sawyer that he did not intend to steal from the finance companies, and that although he might be technically guilty he was not morally guilty. But Strauss has never denied participation in the scheme to defraud, nor has he denied that he made false representations to deceive and cheat the finance companies. After he unequivocally admitted his guilt at his arraignment, he remained silent, neither retracting his admissions nor testifying about any mitigating circumstances.

The government has shown that it would suffer prejudice if Strauss's plea were withdrawn. In contrast, Strauss has presented no satisfactory reason for allowing the withdrawal of his plea. Weighing the prejudice to the government against Strauss's reasons for withdrawal, we conclude that the district court did not abuse its discretion by denying Strauss's motion.

*Affirmed.*

---

4. The court permitted Strauss to introduce the report without requiring the psychiatrist to testify.