**James Franklin O'KELLEY, III, Appellant,**

v.

**STATE OF NORTH CAROLINA, Appellee.**

Nos. 78–6330, 78–6334.

United States Court of Appeals, Fourth Circuit.

Submitted Feb. 6, 1979.

Decided June 29, 1979.

Thomas F. Loflin, III, James R. Acker and Loflin, Loflin, Galloway, Leary & Acker, Durham, N. C., on brief, for appellant.

Before WINTER and PHILLIPS, Circuit Judges, and THOMSEN,* Senior District Judge.

THOMSEN, Senior District Judge.

Appellant (O'Kelley) was one of five defendants, all of whom were convicted of armed robbery of an automobile and acquitted of kidnapping, in a joint trial in a North Carolina state court. After exhaustion of his state remedies, O'Kelley filed a habeas corpus proceeding in the Western District of North Carolina, contending: (A) that he was denied the effective assistance of counsel at his trial (i) because his court-appointed attorney was also appointed to represent a co-defendant (Williams) with whom O'Kelley alleged that he had a conflict of interest, and (ii) because of alleged incompetence of his trial attorney, and (B) that he was denied a fair trial for various other reasons, including (i) the admission of prejudicial testimony, (ii) prejudicial pretrial publicity, and (iii) various incidents at the trial.[1]

After considering the trial record and the arguments of petitioner's present counsel, the district judge granted the State's motion to dismiss all allegations in the petition except the allegation that O'Kelley "was denied the effective assistance of counsel by being forced to share counsel with a co-defendant with whom he had conflicting interests." The district judge granted an evidentiary hearing on that issue, and thereafter filed an opinion in which he correctly stated the test to be applied, namely:

The mere fact of joint representation does not amount to a deprivation of effective assistance of counsel. Petitioner must show (1) that there existed a significant divergence of interests between him and Williams which might reasonably have resulted in some prejudice to him and (2) that he did not knowingly and voluntarily waive his right to conflict-free representation. *United States v. Atkinson*, 565 F.2d 1283 (4th Cir. 1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *United States v. Truglio*, 493 F.2d 574 (4th Cir. 1974).

The district judge then stated:

Petitioner [O'Kelley] has pointed out two respects in which a significant divergence of interests existed between him and Williams. Both are in areas that might have affected the sentence imposed but not the *conviction* itself.

The two areas referred to by the district judge were: (1) the failure of his attorney to emphasize at the sentencing hearing the fact that O'Kelley's prior record was much less serious than that of Williams;[2] and (2)

---

* Of the District of Maryland, sitting by designation.

1. O'Kelley raised several other points in the district court which have not been pressed on appeal.

2. The sentence imposed on Williams was imprisonment for not less than 28 nor more than 30 years; O'Kelley's sentence was not less than 26 nor more than 30 years.

the failure of his attorney to put Williams on the stand during the trial in an effort to show that a shotgun which belonged to Williams was not in O'Kelley's possession at the time of the robbery for which all five defendants were convicted. In all other respects it is clear from the record that the representation of O'Kelley was adequate and effective, notably in the success of counsel in obtaining his acquittal on the kidnapping charges.

### (1)

█ The district judge was correct in his statement that O'Kelley's past record was clearly less serious than that of Williams, and that:

> . . . Whatever may be the case generally, [counsel's] joint representation of petitioner and Williams necessarily prevented counsel from considering single-mindedly whether, on the particular facts of petitioner's case, a strategy designed to separate and distinguish him from the other defendants, including Williams, might be a productive one. The probability is real that such a strategy might have resulted in greater differentiation between O'Kelley's sentence and that received by Williams.

The district judge ordered that there should be a new hearing on sentencing in the state court, at which O'Kelley "shall be entitled to representation by counsel of his choice, or, if he cannot afford counsel, by a court-appointed attorney. He shall be entitled to present whatever evidence and make such argument as he wishes on the issue of punishment."[3]

### (2)

The attorney was appointed by the court to represent O'Kelley on November 1, 1971, and visited him the same day. Two days later the same attorney was appointed to represent Williams, whom the attorney had represented in two previous criminal cases,

but not in connection with this case. The attorney testified in the district court that at all times before and during the trial both O'Kelley and Williams indicated that all the defendants were going to stand together on the charges, that no one was going to take the stand to testify in his own behalf, that this was already decided among them and that none of the defendants, especially O'Kelley and Williams, wanted anything done during the course of the trial or during their representation which would be detrimental to any of the other defendants.

The decision of the Supreme Court in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), discusses the problems which must be considered and the principles which must be applied in deciding questions of joint representation. That case, however, differed in crucial respects from the instant case. In *Holloway* each defendant wished to take the stand; here, all five defendants, including the two represented by one attorney, made it clear that they wished to stand together and that none of them wished to take the stand. In *Holloway* the attorney appointed to represent all the defendants moved on several occasions, both before and during the trial, for separate counsel to be appointed for each of the defendants, stating persuasive grounds therefor. In the instant case no such motion was made; the attorney for O'Kelley and Williams did not believe and neither of the clients desired that separate counsel should be appointed.

█ O'Kelley's present lawyer argues that the trial attorney's representation of O'Kelley was inadequate because, after some evidence had been introduced that O'Kelley had a shotgun in his possession at the time of his arrest, tending to prove that he had it in his possession at the time of the robbery, the attorney did not put Williams on the stand to give testimony which, if believed, would have contradicted that evidence. Williams had testified in the previ-

---

**3.** Although the state appealed from the decision of the district judge, it did not file a brief, and we granted O'Kelley's motion to dismiss the state's appeal.

ous case; therefore, presentation of such testimony (dealing with possession of the shotgun) in the instant case would have been compellable. However, offering such evidence would not only have been contrary to the desire of all the defendants, including O'Kelley, it would have placed both O'Kelley and Williams at the scene of another robbery committed by the other three co-defendants a few hours earlier on the same night. It is hard to believe that a lawyer representing O'Kelley alone would have attempted to offer such proof, which would almost certainly have backfired on O'Kelley, whether or not Williams answered any questions put to him on this point. Possession of a weapon was not a necessary element of the charge of robbery for which O'Kelley was convicted. For an attorney representing O'Kelley alone to have introduced that evidence would probably have resulted in placing O'Kelley at the scene of another crime with the same people earlier in the same night, and probably would have caused counsel for the other defendants to emphasize O'Kelley's part in that night's activities. It would not have exculpated O'Kelley from participation in the crime for which he was standing trial. Nevertheless, the point should have been raised at the sentencing hearing, and the decision of the district court gives a separate attorney for O'Kelley the opportunity to do so at the new sentencing hearing. We agree with the conclusion of the district judge that there was no inadequacy in the trial attorney's representation of O'Kelley which would justify our requiring a new trial.

The district judge properly concluded that the evidence that O'Kelley had such a weapon may have affected the length of his sentence. We agree that a separate attorney for O'Kelley should be allowed to present evidence as well as argument on this point at the new hearing on sentencing in the state court.

We also agree with the district judge that O'Kelley was not denied a fair trial for any

of the other reasons raised by his counsel on appeal. The decision of the district court is

*Affirmed.*

WINTER, Circuit Judge, concurring and dissenting:

The principal question we must decide is whether James Franklin O'Kelley, III was denied effective assistance of counsel by reason of the fact that, when he was convicted of armed robbery, his court-appointed lawyer was also appointed to represent a codefendant with divergent and conflicting interests. The majority holds that he was not. From the majority's resolution of this question, I respectfully dissent. I agree with the majority, however, that the other grounds advanced by O'Kelley for issuance of a federal writ of habeas corpus are lacking in merit.

### I.

Although O'Kelley had four codefendants, we need concern ourselves only with codefendant Michael Bryant Williams in deciding O'Kelley's claim of denial of effective assistance of counsel since Williams was the only other defendant represented by the same lawyer.[1] That lawyer was appointed first to represent O'Kelley; but when Williams also asked for counsel, the same lawyer was appointed to represent him since that lawyer knew him from defending him in other cases. According to the lawyer, the judge making the appointment directed the lawyer "to check and see if there was any conflict and see if I could not represent both of these defendants in these trials." Accordingly, the lawyer went to the jail, saw both of them in the presence of each other, and testified that "they seemed to be very pleased that I was representing both of them." The lawyer testified further that

> the overall feeling was that all the defendants were going to stand together on these charges, that no one was going to take the stand to testify in his own be-

---

1. The three other codefendants, Franklin De-Wayne Wright, Larry Wayne Shue, and Billy Eugene Capel, also requested the appointment

of counsel and three separate lawyers were appointed to represent them.

half, that that was already decided among them, and none of the defendants, especially Mr. O'Kelley and Mr. Williams because they were talking to me, wanted anything done during the course of the trial, or the course of their representation which would be detrimental to any of the other defendants.

The record is clear, however, that this feeling of solidarity on the part of O'Kelley, at least, was an uncounseled one. The lawyer testified that at no time were any suggestions to dissuade O'Kelley from this course of action made. Indeed, according to the lawyer's testimony, O'Kelley's course of strategy, i. e. "that no matter what I did in his behalf, it was not to be at the expense of anyone else that was being tried," accorded with the lawyer's own views. When asked if the lawyer agreed with O'Kelley's attitude, the answer was:

> Professionally and philosophically, even had he not asked me to do that, I would have made a professional determination to conduct his defense, or any defense, in that manner. I think it is counter-productive when a theory of a case is a joint venture, concurrent activity, aiding and abetting, which is what we had, to take pot shots as it was at any of the other Co-Defendants. I think that it is bad professionally.

It is thus not surprising that counsel neither considered nor conducted any separate investigation to see whether there was anything in the case which might serve as a basis for more favorable treatment of O'Kelley than of Williams. The record does not disclose that counsel ever reported counsel's conclusions to the appointing judge, or that that court ever conducted any further investigation into the question of whether there was a conflict of interest between O'Kelley and Williams.

## II.

The district court, which the majority affirms, found that the interests of O'Kelley and Williams diverged only with respect to sentencing but that there was no conflict between them with respect to their convic-tion. In my view, their interests did conflict and I think that O'Kelley is entitled to have his conviction set aside and to be tried anew.

From evidence adduced at the trial, it appears that the degree of culpability for commission of the crime on the part of O'Kelley was less than that on the part of Williams. Briefly stated, that evidence showed that in the late night hours of August 8, 1971, or in the early morning of August 9, 1971, the defendants Williams and Shue flagged down the automobile owned by and being driven by one James Erwin, in which one Robert Herrin was riding as a passenger. Erwin stopped the car, at which time Shue pulled a pistol on him and demanded that he and Williams be driven to Charlotte. Williams and Shue got in the back seat of Erwin's car, and Erwin drove approximately 100 yards down the road to a telephone booth, where three other men, later identified as the defendants Wright, Capel and O'Kelley, entered the car. Erwin then drove to a gasoline service station, where he pulled in on the excuse that his car was overheating. Erwin got out to check the water, advising the service station attendant, one Johnny Bollinger, to call the police. Bollinger attempted to call the police, but the defendant Capel emerged from the car with his hand in his pocket, as if it were a gun, and told him to drop the phone. Bollinger did so, and he and Erwin then fled the area, while Herrin remained in the car with the defendants. Bollinger and Erwin heard gunshots, evidently fired by the defendant Wright, as they ran. Shortly thereafter, Herrin was permitted to leave the car. Erwin's car was recovered some hours later. It had been incinerated and was substantially damaged.

In addition to the evidence that O'Kelley, unlike Williams, was not one of the original hijackers and that O'Kelley, unlike some of the other defendants, did not actually employ a weapon, O'Kelley, although he had a record of prior convictions, had been convicted for such nonviolent crimes as passing worthless checks, forgery and escape, while Williams had prior convictions for accessory

after the fact of murder and several instances of breaking and entering or larceny. Moreover, Williams had testified in another trial before the instant case that he had employed a weapon in perpetrating an armed robbery to obtain a pistol.

None of the four other defendants indicated an intention to plead guilty; all went to trial and were convicted of armed robbery although acquitted of kidnapping. Because the prosecution was being required to prove its case against all and because O'Kelley, vis à vis Williams and some of the other defendants, was less culpable and had a less aggravated record of prior convictions, I would think that the Sixth Amendment required the lawyer to discuss with O'Kelley and advise him with regard to the possibility that O'Kelley would plead guilty and testify for the prosecution in exchange for the prosecution's accepting a plea to a lesser offense or making a favorable sentencing recommendation. The Sixth Amendment requires effective counsel to demonstrate the "range of competence demanded of attorneys in criminal cases." *Marzullo v. State of Maryland*, 561 F.2d 540, 543 (4 Cir. 1977), *cert. den.*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978). Certainly, on the facts of this case, that range of competence required counsel to explore "possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable." *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978). Counsel's failure to do

so whether for "professional" or "philosophical" reasons, or from mere inattention or oversight, rendered counsel ineffective unless it can be said that O'Kelley waived representation of that nature. *Id.* at 483 n.5, 98 S.Ct. 1173.

### III.

Waiver cannot be found on this record. While the record shows that O'Kelley was specific that he wished to go it alone, the record supports the district court's finding that O'Kelley clearly did not waive his right to conflict-free counsel.[2] Where I differ from the district court and the majority is that I do not think that the disabling conflict of interest was limited to sentencing. On the facts of the case, including the position of the other defendants and the criminal background of O'Kelley vis à vis Williams, I think that the conflict extended to the question of O'Kelley's guilt or innocence, including the possibility of a plea bargain.[3] Under such circumstances, I understand the law to be that O'Kelley is not required to demonstrate specific prejudice and that he is entitled to have his conviction voided and to be awarded a new trial. *Holloway v. Arkansas, supra* at 487–91, 98 S.Ct. 1173. This I would give him.

---

**2.** Notwithstanding this finding, the majority seemingly invokes waiver in distinguishing this case from *Holloway* on the ground that here, unlike the facts in *Holloway*, the defendants made it clear that they wished to stand together and none wished to testify. I do not doubt that a defendant may waive his right to pursue a trial strategy possibly beneficial to him but deleterious to a codefendant, but there can hardly be waiver when counsel did not discuss with O'Kelley, either within or without the presence of Williams, the possibility of a separate strategy and the record does not otherwise show that O'Kelley was aware of that possibility. As the testimony shows, counsel was "professionally" and "philosophically" restricted

from advising O'Kelley of his rights in this regard.

**3.** O'Kelley's present counsel contends that the divergence of the interests of O'Kelley and Williams manifested itself also in trial counsel's inability and failure to advise O'Kelley about calling Williams as a witness, about testifying himself, about arguing to the jury the relative weakness of the prosecution's case against O'Kelley as compared to Williams, and about offering evidence to explain away O'Kelley's possession of a shotgun at the time that he was arrested. I do not consider these because I think that the ineffectiveness of counsel in the single instance that I have discussed is sufficient to warrant habeas relief.