UNITED STATES of America,
Plaintiff-Appellee,

v.

John Eric THOMPSON and Ralph Giacinti, Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

John Edward WILLIAMS,
Defendant-Appellant.

Nos. 80–2568, 80–2609.

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1981.

Decided June 10, 1982.

Rehearing and Rehearing En Banc
Denied Aug. 30, 1982.

Joseph R. Napoli, Peoria, Ill., Kennith W. Blan, Jr., Danville, Ill., for defendants-appellants.

Lee Smith, U. S. Atty., Gerald D. Fines, U. S. Atty., Springfield, Ill., Janet L. Jannusch, Asst. U. S. Atty., Peoria, Ill., for the U. S.

Before SWYGERT, Senior Circuit Judge, SPRECHER, Circuit Judge,[*] and HOFFMAN, Senior District Judge.[**]

[*] Judge Sprecher heard oral argument and participated in the conference which followed. He died May 15, 1982 and did not participate in the preparation or approval of this opinion.

[**] The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. At the request of counsel for Williams, his arraignment was rescheduled for July 22, 1980.

2. Actually two attorneys represented Thompson and Giacinti jointly. Williams was represented by a third attorney.

3. The plea agreement consisted of an understanding by the Government that Count II

WALTER E. HOFFMAN, Senior District Judge.

Following the return of an indictment against John Eric Thompson, John Edward Williams and Ralph Giacinti charging, in Count I, a conspiracy to manufacture methamphetamine, a Schedule II Controlled Substance and, in Count II, attempting to produce a quantity of methamphetamine, the defendants were directed to appear for arraignment on July 21, 1980.[1] All entered pleas of not guilty and a jury trial was scheduled for September 16, 1980. The defendants, represented by separate counsel,[2] filed motions to suppress the evidence allegedly illegally seized, along with other miscellaneous motions not now relevant to the case.

On August 15, 1980, the district court heard and denied the motion to dismiss filed by Thompson and Giacinti. Discovery motions were disposed of without controversy. On the motions to suppress, the court heard the evidence, took the matter under advisement, and invited briefs. Subsequently, on September 8, 1980, the district court entered its decision and order denying the motions to suppress for reasons stated therein.

One day prior to the scheduled trial date, the defendants, Thompson and Giacinti, having entered into a plea agreement with the prosecution, changed their pleas of not guilty to Count I of the indictment, and tendered their pleas of guilty to that count. After interrogating the parties and the attorneys, in substantial compliance with Rule 11, F.R.Cr.P.,[3] the Court accepted the plea

would be dismissed, the Assistant United States Attorney would make no recommendation as to the sentence to be imposed on Count I and would present no testimony at the sentencing hearing in aggravation. Further, the Government agreed that it would not prosecute the defendants for any narcotic related offenses arising out of the same time period, namely, from approximately January, 1980 through June 12, 1980, as disclosed in the reports which were revealed to defense counsel. As an additional part of the plea agreement, Thompson and Giacinti agreed that if called to testify at the instance of John Edward Williams or the

agreement and referred the matter for a presentence investigation and report. Direct inquiry was made personally of the defendants and they stated that they understood the agreement and approved of same.

Later that same day, the defendant, Williams, appeared and asked leave to change his plea to that of guilty on Count I, pursuant to a like agreement that the Government had already made with Thompson and Giacinti. Once again, in compliance with Rule 11, the district court went over the plea agreement, received assurance that Williams understood and approved of it, and asked the pertinent questions to assure the understanding and voluntariness of the guilty plea as well as the maximum possible punishment which could be imposed.[4] The district court then *accepted* the plea agreement and, as with respect to Thompson and Giacinti, referred the matter for a presentence investigation and report.

Between September 16, 1980, when the court *accepted* the plea agreements, and the date scheduled for sentencing disposition on October 24, 1980, Williams secured additional counsel. On October 23, 1980, Williams, through his new additional counsel, filed a motion to withdraw his plea of guilty pursuant to Rule 32(d), F.R.Cr.P. On the following day, after hearing from new and former counsel for Williams, the court denied the motion, and thereafter sentenced all three defendants on Count I, and dismissed Count II on motion of the Government. On October 30, 1980, Thompson and Giacinti filed their joint notice of appeal and Williams followed with his notice of appeal on November 3, 1980.

It was not until February 23, 1981, that Thompson and Giacinti filed their motion in the district court to withdraw their respective pleas of guilty. They also filed a motion for reduction or correction of sentence under Rule 35, F.R.Cr.P. In the interim, the district court had lost jurisdiction to act upon the motions due to the pendency of the appeal.

The principal issue—and probably the sole issue of importance—on this appeal pertains to the right of a defendant to withdraw his plea of guilty *after the acceptance* of the plea agreement but prior to sentencing as to Williams, and the right, if any, to withdraw a plea of guilty after sentencing with respect to Thompson and Giacinti. With respect to the last named defendants, they obtained new counsel after the appeal had been docketed and an opening brief had been filed by former trial counsel. Their motions to withdraw their pleas of guilty are grounded upon ineffective services rendered by their former attorneys.

### Thompson and Giacinti

The matter involving these defendants' (1) motion for leave to amend the record on appeal filed March 16, 1981, and (2) a motion for extension of time within which to file appellants' amended brief on appeal filed the same day, was referred to Judge Swygert as the presiding judge of the panel; the case having been scheduled for oral argument on April 9, 1981. On April 6, Judge Swygert, having received the Government's response pursuant to his order of March 19, 1981, directed that the

---

Government in the trial of the co-defendant, "Eddy Williams", they would testify truthfully. A further condition reads:

"This agreement is made upon the express condition that if the Court for any reason—either now or after any presentence investigation—feels that it cannot concur in this agreement, then in that event the defendants will have the right to either reaffirm their pleas or withdraw them. And if the pleas are withdrawn, they cannot be used against them in any future proceedings."

The district court fully complied with the plea agreement.

**4.** All defendants contended in oral argument that the district court had failed to comply with Rule 11. To the contrary, the record establishes that the district court was meticulously careful in propounding its inquiries to the defendants. The 1974 amendment to Rule 11 did away with the necessity of assuring that the defendant understand "the consequences of his plea" and substituted the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), in more general terms.

"named motions will be taken with the case".

██ Without a complete record on the issue of alleged incompetent counsel, it is impossible for this court to determine this issue. Rule 32(d), F.R.Cr.P. provides:

A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

A review of the record affords no basis for this court to find any semblance of "manifest injustice". Thompson and Giacinti each received a sentence of three years under 18 U.S.C. § 4205(b), thereby making them eligible for parole consideration at any time. The maximum punishment was five years and a fine of $15,000, either or both, 21 U.S.C. § 841(b)(1)(B). The appellants argue that the sentences "were unduly harsh and without regard and consideration of all the pertinent factors." The conspiracy charge between Thompson, Giacinti and Williams pertained to the manufacture of methamphetamine, a Schedule II controlled substance. Two undercover DEA agents were likewise involved. The district court carefully considered the motions to suppress and the factual basis for the pleas, as well as the evidence presented by way of mitigation, prior to sentencing. Unless we are to adopt a *per se* rule that a first offender is automatically entitled to a lesser sentence than that here imposed, we fail to note any factors which were not considered and· weighed by the district judge. It is an accepted rule of law that a Court of Appeals has no power to change or reduce a sentence on the ground that it is too severe, and there is presently no provision for appellate review unless the imposed sentence exceeds the statutory maximum or the sentencing judge has failed to exercise any discretion in imposing a sentence. *United States v. Main*, 598 F.2d 1086, 1094 (7th Cir.), *cert. denied*, 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 371 (1979); *United*

*States v. Johnson*, 507 F.2d 826, 830–31 (7th Cir. 1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975). The fact that the district court imposed a five year sentence as to Williams is at least some indication that he exercised discretion in sentencing Thompson and Giacinti.

To permit consideration by an appellate court of a belated motion to withdraw a plea of guilty, or to otherwise remand the matter back to the district court, would literally destroy the proper administration of justice in handling criminal appeals. Nearly all defendants, having entered guilty pleas, would note appeals and, shortly before argument, would file a motion to withdraw the guilty pleas solely for the purpose of delay. If, in fact, these appellants have a meritorious claim of ineffective representation, they may, if so advised, proceed under 28 U.S.C. § 2255, but this should never delay the ordinary course of an appeal.

██ The motions for reduction of sentences are for the trial court. Thompson and Giacinti, by reason of the appeal, have 120 days following receipt of the mandate from this court to file any motion under Rule 35, F.R.Cr.P.

### John Edward Williams

This appellant presents a different problem as he filed his motion to withdraw his plea of guilty one day prior to sentencing.· In other respects his case is essentially identical with that of Thompson and Giacinti.

As noted, Rule 32(d), F.R.Cr.P., provides that a motion to withdraw a plea of guilty "may be made only before sentence is imposed or imposition of sentence is suspended". Thus, Williams complied with Rule 32(d). The question is whether the filing of a timely motion under Rule 32(d) affords a defendant an absolute right to withdraw his plea of guilty. Appellant's present counsel urges that there would be no prejudice to the Government in permitting the plea to be withdrawn and, in the absence of a showing of prejudice, the right to withdraw is absolute.

We disagree with the contention that the Government must show prejudice or otherwise the motion to withdraw a guilty plea must be granted. In support of appellant's position there is some authority, although it appears to be the minority view. In *United States v. Savage*, 561 F.2d 554 (4th Cir. 1977), the defendant pleaded guilty pursuant to a plea agreement that the government would recommend a sentence of five years. At the sentencing hearing, it being agreed that the court was not bound by the recommendations, the trial judge indicated his unwillingness to follow the government's recommendation, so the defendant moved to withdraw his plea prior to sentencing. The motion was denied and, on appeal, the court held that there had been no violation of Rule 11 in that the refusal to accept the government's recommendation did not constitute a rejection of the plea agreement, but the court went further to hold that, absent any showing of prejudice by the government, the defendant should be allowed to withdraw his plea, and only upon such a showing by the government must the court "weigh the defendant's reasons for seeking to withdraw his plea against the prejudice which the government will suffer." See also *United States v. Strauss*, 563 F.2d 127 (4th Cir. 1977); 2 C. Wright, *Federal Practice and Procedure*, § 538, at 474–75 (1969).

Such an interpretation may have been reasonably necessary prior to the more recent revisions of Rule 11. Now, and at the pertinent times with respect to the instant case, Rule 11 provides for the placing of plea agreements on the record, for full inquiry into the voluntariness of the plea, for detailed advice to the defendant concerning his rights, and the maximum possible punishment as to the charge for which the guilty plea is entered, a determination that the defendant understands these matters, and for an ascertainment of the accuracy of the plea. Given the great care with which guilty pleas are taken under the existing language of Rule 11, there is no reason to view pleas so taken as merely "tentative", subject to withdrawal before sentence whenever the government cannot establish prejudice.

The Second Circuit disagrees with the Fourth Circuit. As stated in *United States v. Saft*, 558 F.2d 1073 (2d Cir. 1977): "The Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a guilty plea, although such prejudice may be considered by the district court in exercising its discretion."

As stated in *United States v. Barker*, 514 F.2d 208 (D.C.Cir.1975), quoting from *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970):

> Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but "a grave and solemn act", which is "accepted only with care and discernment".

Thus, under *Savage*, the defendant remains free to renege on his plea bargain, absent a showing of prejudice by the Government, notwithstanding full compliance with the plea agreement by the attorney for the government, if it later appears to a defendant from the presentence report, or any casual comment by the trial judge, or from any other source, or indeed for any reason whatsoever including advice from additional counsel, that he wishes to change his mind. What in effect the defendant is doing under the *Savage* approach is to unilaterally convert a plea agreement pursuant to Rule 11(e)(1)(B) into a Rule 11(e)(1)(C) type of agreement, i.e., one with a guarantee of a specific sentence which, if not given, permits the withdrawal of the plea.

In *United States v. Michaelson*, 552 F.2d 472 (2d Cir. 1977), it was critically stated that "the Rule [32(d)] offers little guidance as to the applicable standard for a pre-sentence withdrawal of plea". Perhaps the "fair and just" standard referred to by dictum in *Kercheval v. United States*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927),

should be adopted.[5] *United States v. Barker, supra; United States v. Bradin*, 535 F.2d 1039 (8th Cir. 1976). In any event, whatever the standard may be, "the defendant has the burden of satisfying the trial judge that there are valid grounds for withdrawal". *United States v. Michaelson, supra.*

This circuit has interpreted Rule 32(d) as placing the issue of granting or denying a motion to withdraw a plea of guilty "in the discretion of the trial court and is not a matter of right", *United States v. Marcus*, 213 F.2d 230, 232 (7th Cir. 1954), and "[T]he withdrawal of a guilty plea is not an absolute right but is within the sound discretion of the trial court and will not be reversed except upon an abuse of that discretion", *United States v. Wright*, 407 F.2d 952, 954 (7th Cir. 1969). There is nothing in *United States v. Bell*, 572 F.2d 579 (7th Cir. 1978), which conflicts with the foregoing principle. In *Bell*, the ruling on the motion to withdraw the plea of guilty was filed 42 days prior to the sentencing hearing, but the court took no action on the motion until *after* sentencing. On appeal, we held that Rule 32(d) contemplated that the motion and ruling thereon had to be prior to sentencing, as was done by the district court in this case with respect to Williams' motion. Bearing in mind that Williams filed his motion on the day prior to sentencing, it is even possible under *Bell* for the court to have not acted in light of the following language:

> If the motion for change of plea had been made on the eve of the sentencing hearing, so that it reasonably could have been viewed as an effort to delay that hearing, there might have been some reason for the court to proceed with the sentencing hearing without deciding the motion, although even then it would have been

·better to rule on the motion before sentencing.

As noted, however, Judge Morgan endeavored, to every extent possible, to ascertain some valid reason why Williams wanted to withdraw his guilty plea. As Judge Schnackenberg said in *Marcus, supra*, at 232: "It may well be that in pleading guilty defendant believed that his punishment would be less than what was actually imposed upon him. This, of course, presents no ground for the withdrawal of his plea."[6]

Additional newly acquired counsel for Williams argued the motion. At the outset he contended that Rule 32(d) did not require him to state the reasons for withdrawal of the guilty plea. Moreover, counsel said:

> The real issue, I would suggest to the Court, is what harm is there to the government and in what way is the government's case at all prejudiced if in hearing facts in open court the Court determines that there are valid reasons from the defendant's aspect to withdraw the plea? How is the prosecutor prejudiced or harmed in any way?

The Court replied:

> Well, I haven't indicated that I thought they were harmed by hearing the matter. But I'd like to know what we are going to hear before we start hearing it.
>
> I would think there would be nothing wrong with stating in the motion some basis for it, and I haven't heard it yet—what basis you think exists withdrawing this plea that so far seems to me to be really and clearly entered.

Counsel for Williams gave an evasive answer by merely stating that "anything I

---

**5.** The Advisory Committee on Criminal Rules has recommended the adoption of the "fair and just" standard with respect to the withdrawal of a guilty plea prior to sentencing. *See* Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, October 1981, pp. 48, 49, which will require a showing by the defendant of "any fair and just reason". The amendment to Rule 32(d) was circulated to the bench and bar and is awaiting final action.

**6.** In some areas throughout the nation, plea agreements are made in anticipation that the district judge will impose a sentence which is less than that agreed upon. This would not be applicable as to Williams because the plea agreement did not call for a recommended sentence. The sentence itself, whether confinement or probation, was left solely to the discretion of the trial court.

would say would be outside the record'.'. The Court then inquired whether counsel had any knowledge of "what you want to prove", or did counsel merely want an "exploratory session". Counsel then replied that Williams first heard about his co-defendants changing their pleas on the morning the plea was entered, and that a possible like agreement was available to him. Williams had driven to Peoria and, on the same afternoon, appeared in court and withdrew his not guilty plea, entered a plea of guilty, and received the same plea agreement as was agreed upon by Thompson and Giacinti.

The Assistant United States Attorney took issue with the statement that September 16—the date the court accepted the pleas of guilty and the plea agreement—was the first day Williams had been informed that the government was willing to make him a "plea offer". According to the Government, the same offer was made approximately "a week after arraignment". Counsel for Williams then urged that the Court hear the testimony of Williams' attorney of record at that time (the attorney then being present in court) and the defendant. There was no apparent contradiction of the statement by the Assistant United States Attorney.

Williams appeared with counsel on September 16, 1980 [7] at 2:40 P.M., apparently after the pleas of guilty had been accepted by the district court as to Thompson and Giacinti. The attorney, who had represented Williams throughout, requested additional time to confer with his client. The request was granted and the court indicated that, if appropriate, the plea could be changed prior to the jury trial the following morning. Later that same afternoon, however, Williams and his attorney again appeared before the court for the purpose of changing the plea to that of guilty as to

Count I of the indictment. After thoroughly interrogating Williams as required by Rule 11, the court stated:

> All right, your plea of not guilty may be withdrawn to Count I. Your plea of guilty will be received. *The Court will concur and go along with the agreement as it did with your co-defendants this morning.*
>
> Prior to determining the matter of sentence, of course, the court wants the benefit of a report of pre-sentence investigation . . . After the report is received a copy will be sent to your attorney and time for sentencing will be set, at which time you will have an opportunity to comment on the pre-sentence report or to introduce any statement or evidence you may wish in mitigation of punishment or otherwise. (Emphasis supplied).

Thus, it should be noted that the Court actually accepted the plea agreement at the time Williams changed his plea to that of guilty to Count I. The sentencing hearing on October 24, 1980, at which time Williams' motion to withdraw his plea was heard (although no evidence was taken because Williams' new and additional counsel failed to come forward with a "fair and just reason" why the guilty plea should be withdrawn), was routine and, of course, all defendants had the benefit of the pre-sentence report well in advance of this hearing.

We hold that a "fair and just reason" for withdrawal of a guilty plea must be presented to the trial court before any evidentiary hearing on the motion to withdraw the plea need be considered. While lack of prejudice to the Government may be a factor to be considered along with all other factors, we reject the premise that there is an automatic right to withdraw the guilty plea merely because the Government has made no showing of prejudice.[8] We

---

**7.** Apparently Williams' trial date had been rescheduled for September 17, 1980, for reasons not disclosed by the record.

**8.** The Advisory Committee has also circulated for comment by the bench and bar a proposed amendment to Rule 32(c)(3)(A) which will require disclosure of the recommendation by the

probation officer, subject to certain exceptions not herein pertinent. We are advised that there is considerable opposition to this proposal and the propriety of such amendment has

further hold that, with respect to Williams, he had ample time to consider the terms of the plea agreement prior to the court's agreement of same. His contention that he was "rushed" into the agreement is without merit. The Court was correct in its handling of the motion to withdraw the guilty plea.

### Rule 11(e)(2)

Additionally, Williams urges that the district court failed to comply with Rule 11(e)(2) which provides in part with respect to plea agreements that—

> If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request [as contained in the plea agreement] the defendant nevertheless has no right to withdraw his plea.

It is true that the plea agreement was a hybrid type as it also contained a provision for the dismissal of Count II which, standing alone, is contained in Rule 11(e)(1)(A), referred to as an "A type" agreement. The agreement also contained a partial "B type" arrangement in that, while no particular sentence was recommended or requested, there was nothing to bind the court as to the length of any sentence if it was within the statutory limitations.

█ The short answer to the foregoing argument is that Judge Morgan accepted the plea agreement at the time the guilty plea was entered when he said: "The Court will concur in and go along with the agreement as it did with your co-defendants this morning." We need not consider the argument that the district court failed to warn Williams that he had no right to withdraw his plea as the agreement had already been accepted. As Rule 11(e)(2) provides, the court may accept or reject the agreement if it be an "A" or "C" type, or may defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report. The "B" type agreement refers to a "particular sentence" which is non-existent in the case involving Williams. Thus, since there was no "particular sentence" recommended or requested, there was no obligation upon the district court to warn the defendant that he had no right to withdraw his plea even if he had not previously accepted the plea agreement.

### Williams' Knowledge of Law

Relying upon *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), Williams suggests that his guilty plea was not voluntary because he did not understand the nature of the charge against him. At the outset the Court inquired of Williams whether he understood and approved the plea agreement, and that Williams had the right to maintain his plea of not guilty previously entered. In explaining the nature of the charge, the Court said:

> Now, this indictment charges in Count I that you conspired with John Eric Thompson and Ralph Giacinti to obtain ingredients and equipment to—combining the ingredients to make controlled substances in all the detail that is alleged in Count I. You have been through that thoroughly with your attorney, have you?
> DEFENDANT: Yes, sir.
> THE COURT: Is there any part of that that is not true, sir?
> MR. WERKSMAN [counsel for Williams]: Judge, there is one portion that has no legal significance but we'd want the Court to know is that Mr. Thompson (sic—should be Mr. Williams) didn't become involved until about the 9th of June. And while this conspiracy may have started on May 24th with respect to the other two defendants and the other undercover agents, Mr. Williams was unaware of what was going on. Had no criminal intent and did not become in-

not been finally considered. However, if it should be adopted and if prejudice to the Government is required to be shown, the defendant would be advised of the recommendation and, if he does not approve of same, he would be at liberty to withdraw his guilty plea and go to trial on a plea of not guilty. Such a procedure would render a guilty plea useless and would completely destroy the proper administration of justice.

volved until solicited by his co-defendants on or about the date of June 9.

So I have explained to him that a person adopts a conspiracy as he finds it. So while we have no disagreement with the legal ramifications of the count, Mr. Williams was concerned about that and I wanted to bring it to the Court's attention.

Thereafter followed a colloquy between the court and counsel and an agreement that the point would not be significant as to the defendant's guilt or innocence on Count I. Following which the Court inquired of the defendant:

All right, sir. Understanding all of this and on that basis, Mr. Williams, you wish to withdraw your plea of not guilty to Count I and enter a plea of guilty subject only to the agreement; is that correct, sir?

DEFENDANT: Yes, sir.

Williams relies upon a statement from *McCarthy, supra*, at 466, 89 S.Ct. at 1170, in which the late Chief Justice Warren said: "Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." Following this statement, the opinion discusses the necessity of a factual basis for the plea emphasizing the fact that the judge must determine "that the conduct which the defendant admits constitutes the offense charged in the indictment . . . or an offense included therein to which the defendant has pleaded guilty." In the case of Williams, there was clearly a sufficient inquiry into the law to cause Williams to realize that his conduct fell within the charge as set forth in Count I. *McCarthy, supra*, in addition to the foregoing significantly pointed out that at the sentencing hearing his counsel insisted that his client's acts were merely "neglectful", "inadver-

tent", and committed without "any disposition to deprive the United States of its due". Since the crime of tax evasion requires a "knowing and willful" attempt to defraud, this statement by defendant's counsel should have constituted an intimation that McCarthy pleaded guilty without full awareness of the nature of the charge, all of which is not present in the Williams record.[9]

The appendix following the opinion in *McCarthy, supra*, clearly shows that the district court failed to ask the defendant anything with respect to the nature of the charge of tax evasion, although the court did refer to "tax evasion" on one occasion. Combined with statements of counsel at the sentencing hearing which reflect an absence of "intent to defraud", the McCarthy opinion is correct in pronouncing that some direct inquiry as to the nature of the charge is still required, but such a direct inquiry was made to Williams.

The *McCarthy per se* rule was justified in 1966 as Rule 11 then consisted of only four brief sentences. The 1975 amendments to Rule 11 were adopted to ensure that the defendant makes an informed plea and that all plea agreements are brought out into the open in court. As reflected in the Advisory Committee Notes to the proposed amendment to Rule 11(h)—the harmless error proposal—the 1975 amendments increased the risk that a trial judge, in a particular case, might inadvertently deviate to some degree from the procedure which a very literal reading of Rule 11 would appear to require.[10]

While it may be true that the judge did not directly ask the defendant if he understood the nature of the charge as contained in Count I, we feel that the court's review of the basic conspiracy charge and its inquiry as to whether the

---

9. There is a statement made by counsel for Williams at the change of plea hearing to the effect that, if the case went to trial on a plea of not guilty, Williams would admit all of the factual allegations but would rely solely on the defense of entrapment. This is a further indi-

cation that Williams understood the law as related to the facts.

10. *See*, Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, Rule 11(h), pp. 25–30.

defendant had thoroughly discussed the conspiracy charge with his counsel is sufficient compliance with Rule 11 when the defendant assures the court that he has gone over the matter with counsel, especially when counsel then elaborates on the one point which was disturbing to the defendant, i.e., the date on which he joined the conspiracy. The law is well-settled that Rule 11 should not be read as requiring a litany or any other ritual which can be carried out by word-for-word adherence to a set script. It is sufficient if the colloquy between the court and the defendant would lead a reasonable person to believe that the defendant understood the nature of the charge.

■ As a part of Williams' contention that he did not understand the nature of the charge, he claims that no factual basis for the plea had been presented when Williams sought leave to change his plea, and the plea of guilty had been accepted. The judge had heard the factual basis for the plea earlier that day when Thompson and Giacinti changed their plea on Count I. All parties, including Williams and his counsel, had participated actively in the hearing on the motions to suppress on August 15, 1980 at which time Agent Brunholtz had testified for 38 pages. When the change of plea was accepted by the judge, he made inquiry of the Assistant United States Attorney as to whether the factual basis for the plea would be the same as stated earlier that morning with the co-defendants. Later, the judge, recognizing that Rule 11 requires a factual basis for the plea and that neither Williams nor his attorney had been present when the factual basis was submitted with respect to Thompson and Giacinti, said:

> But in my own mind I want to know if there is anything else alleged here in Count I that your client thinks is not true.

To which counsel for Williams replied:

> Just a matter of emphasis. Factually I think it is accurate. I told Your Honor before that had there been a trial here that the defense would be entrapment, which would have been an admission that the facts occurred as alleged.

■ The purpose of requiring a factual basis for a plea as now stated in Rule 11(f) and as included in the 1966 amendment to the Rules is to assure the court that the conduct which the defendant admits by his plea of guilty constitutes the offense charged in the indictment or a lesser offense included therein. Where there are multiple defendants, it would border on the ridiculous to require a repetition of the factual plea as to each defendant to be sentenced. True, it may aid a defendant who pleads guilty without realizing that his conduct does not actually fall within the charge, and this issue was explored in Williams' case where it appears that he joined the conspiracy on a date later than that as charged.

### The Motions To Suppress

■ All defendants desire for this Court to consider the district court's ruling on the motions to suppress. In light of the guilty pleas, we decline to do so.

In *United States v. Brown,* 499 F.2d 829 (7th Cir. 1974), seven defendants entered pleas of guilty after an evidentiary hearing on the motion to suppress was heard and decided adversely as to two defendants. The district judge, in accepting the guilty pleas as to these two defendants, said: "I think you could preserve your right to appeal on [the motion to suppress] even if you plead guilty, subject to that condition." Judge Sprecher, writing for the Court, permitted an inquiry as to the correctness of the ruling on the motion to suppress solely because the district court held out some reason for the defendants to believe that they were pleading guilty "subject to that condition", such action being in reliance upon *United States v. Cox,* 464 F.2d 937 (6th Cir. 1972), but also pointedly stated that an appeal on nonjurisdictional grounds following an intelligent and voluntary plea of guilty violated public and judicial policy. In *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1972), the Court said:

When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

In these cases, at no time did any defendant suggest that he was entering a "conditional plea". Once again, we refer to the Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, October 1981, where it is proposed that a defendant may, with the approval of the court and the consent of the government, enter a "conditional plea" of guilty and reserve his right to appeal—a practice already prevailing in the Second and Third Circuits, and inferentially approved by the Supreme Court in *Lefkowitz v. Newsome*, 420 U.S. 283, 293, 95 S.Ct. 886, 891, 43 L.Ed.2d 196 (1975), and *Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965). However, the defendants herein cannot be aided by the possibility of the adoption of Rule 11(a)(2) as (1) it is not now in effect, (2) this Circuit has expressed its disapproval of the procedure, (3) the defendants did not enter their guilty pleas with the idea that they could appeal the adverse ruling on the motions to suppress, and (4) the court did not approve a "conditional plea" nor did the prosecution consent thereto.

The judgments of conviction as to all defendants are affirmed.

AFFIRMED.