978 F.2d 1260
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Homer A. HESS, Defendant-Appellant.
 No. 91-4115.
 United States Court of Appeals, Sixth Circuit.
 Nov. 5, 1992.
 
 Before KENNEDY and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Homer A. Hess appeals the judgment of conviction pursuant to his guilty pleas to one count of bank fraud in violation of 18 U.S.C. § 1344 and two counts of bankruptcy fraud in violation of 18 U.S.C. § 152. On appeal, the sole issue is whether the district court abused its discretion by failing to conduct an evidentiary hearing prior to overruling defendant's motion to withdraw his guilty pleas. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On February 6, 1991, a federal grand jury in the Northern District of Ohio indicted defendant. He was named in 16 of the 18 counts of the indictment which also named nine other defendants. In the indictment, Hess was indicted on one count of conspiracy in violation of 18 U.S.C. § 371; two counts of bank fraud in violation of 18 U.S.C. § 1344; two counts of making, uttering, and possessing forged securities in violation of 18 U.S.C. § 513; and eleven counts of bankruptcy fraud in violation of 18 U.S.C. § 152.
 
 
 3
 Defendant was arraigned on February 15, 1991; he entered pleas of not guilty to all the charges. Subsequently, on June 11, 1991, a superseding indictment was returned by the federal grand jury. The superseding indictment included two more counts or a total of 20 counts, and it named three additional defendants. In addition to the 16 charges against defendant in the initial indictment, the superseding indictment included two additional charges of bankruptcy fraud against defendant.
 
 
 4
 Defendant owned and operated several corporations engaged in the industrial cleaning business in northeastern Ohio. Two of the corporations filed in bankruptcy under Chapter 11 for reorganization in October 1986.
 
 
 5
 In February 1989, defendant filed an individual petition under Chapter 7 of the Bankruptcy Code. The following month, the Chapter 11 cases of the two corporations were converted to Chapter 7 "liquidation" cases. All three cases were consolidated for administration in the United States Bankruptcy Court in Akron, Ohio.
 
 
 6
 Defendant and 12 others were charged in an overall conspiracy with committing bankruptcy fraud in diverting millions of dollars from his creditors and the bankruptcy court in connection with the three bankruptcy cases. Defendant was also charged with forging the endorsements of a creditor, PennBank, N.A., on two checks which were diverted from his bankruptcy estate, as well as depriving the bank of the proceeds of the check. Further, defendant was charged with bank fraud for engaging in a check kiting scheme, which cost Ameritrust, N.A., approximately $225,000, and with diverting approximately $220,000 from his bankruptcy estate during August and September 1988, in order to pay off the check kiting scheme.
 
 
 7
 Defendant was also charged with numerous individual counts of bankruptcy fraud which included: concealing and destroying books and records of his bankruptcy estates; diverting $30,000 from the estate through the use of a counter check after the estate was frozen; falsely omitting assets from his personal bankruptcy petition; transferring and concealing approximately $196,000 in funds from his court-appointed trustee and the bankruptcy court through a post office box and a series of corporations to a bank in North Carolina; purchasing a house with funds from the bankruptcy estate and concealing the asset from the bankruptcy trustee; fraudulently diverting approximately $1.12 million in funds to support the NASCAR race team of his son and co-defendant, Ben E. Hess; fraudulently transferring contracts of the bankruptcy estate; concealing a 2.28 carat diamond ring from the trustee and bankruptcy court; diverting another $22,000 from his bankruptcy estate through a nominee entity; fraudulently transferring $45,000 to support his son's race team efforts by means of a series of fraudulent invoices; fraudulently transferring funds to his brothers, Alvin T. and Frank W. Hess, in order to continue payments owed to them on defendant's purchase of their interests in the two corporations; and concealing an ownership interest in a corporation known as Black River Petroleum, Inc. In addition, defendant's co-defendants in this case included his son, Ben E. Hess; his sister, Geraldine E. Swartz; and his two brothers, Alvin T. and Frank W. Hess.
 
 B.
 
 8
 Prior to trial, co-defendant Samuel Wormser entered a guilty plea to Count 18 of the superseding indictment. Further, co-defendant Dennis Shanafelt pled guilty to Count 5 of the superseding indictment. Immediately prior to jury selection on August 12, 1991, co-defendant James McGinnis entered a plea of guilty to a superseding information charging him with bankruptcy fraud.
 
 
 9
 The trial of defendant and his remaining co-defendants proceeded for three days. On August 15, 1991, by prearrangement, trial was adjourned. Prior to a scheduled resumption of the trial on August 19, 1991, co-defendant Donald Georgeoff pled guilty to Count 8 of the superseding indictment. After entry of his guilty plea, the United States moved to dismiss the three counts of the superseding indictment against Georgeoff's daughter, Diane Georgeoff, and the motion was granted.
 
 
 10
 Immediately thereafter, co-defendant Joe Mott entered a plea of guilty to Count 11 of the superseding indictment. After entry of his guilty plea, the United States moved to dismiss the two counts of the superseding indictment charging Mott's wife, Sara Mott, and that motion was also granted.
 
 
 11
 The trial then resumed; however, a resolution of the charges against each of the remaining defendants was reached the following day through plea agreements. Co-defendant Ben E. Hess pled guilty to Count 13 of the superseding indictment. Co-defendant Geraldine Swartz entered a plea of guilty to Count 10 of the superseding indictment. Co-defendants Alvin T. and Frank W. Hess pled guilty to superseding information charging them with misdemeanor contempts relative to the conduct charged in Count 19 of the superseding indictment. In the final guilty plea taken in this case, defendant Homer A. Hess pled guilty to Counts 7, 8, and 10 of the superseding indictment.
 
 
 12
 In taking the guilty pleas of defendant Homer A. Hess, the district court twice reminded him that he could change his mind and stand on his previous pleas of not guilty. Next, the court advised defendant of the constitutional rights he was giving up by pleading guilty and fully explained the elements of the crimes charged in Counts 7, 8, and 10 of the superseding indictment. The court also advised defendant of the maximum penalties he was facing and outlined the nature and application of the sentencing guidelines.
 
 
 13
 The district court then received affirmative responses from defendant to its questions concerning whether his guilty pleas were voluntary and the exercise of his own free will. The court also raised the issue of the family relationships between defendant and his co-defendants and its impact on the plea agreements that had been entered into earlier that day stating:
 
 
 14
 Now, you've indicated ... I think somewhat emotionally, that you feel, I think, under some pressure to plead guilty because you have the interest of your son and probably your brothers and your sister all in mind. And the Court's not blind to the fact that this is, that family nuances here are pretty strong in terms of these plea arrangements that have been worked out.
 
 
 15
 I said to your son that it would be improper for him to plead guilty because he thought he had to plead guilty in some fashion to protect you. And I'll say the same thing to you about him. This plea's got to be voluntary on your part. You may feel pressured by the situation, but that doesn't mean that it's involuntary.
 
 
 16
 J.A. p. 121.
 
 
 17
 Defendant replied to the court's statement:
 
 
 18
 Well, what I meant was I have no choice. I mean, I have no choice. I mean, I'm going the voluntary, but I have no choice.
 
 
 19
 J.A. p. 121. The district court then completed the taking of defendant's guilty plea by determining that defendant was not acting under duress or in response to any threats or promises not set forth in the plea agreement.
 
 C.
 
 20
 Thereafter, during the preparation of the presentence investigation report, defendant sent a letter to the district court advising the court that he wished to discharge his appointed counsel and represent himself in all further proceedings before the court. This letter was received by the district court on October 7, 1991. That same day, 47 days after the entry of his guilty pleas, defendant filed his pro se motion to withdraw his guilty pleas. In his motion to withdraw his guilty pleas, defendant claimed that he was innocent, that his pleas were the result of duress, that he was threatened and intimidated by the FBI agent assigned to the investigation, that he received ineffective assistance of counsel, and that the district judge was biased and partial to the prosecution in the trial of the case.
 
 
 21
 The government filed its response to defendant's motion to withdraw his guilty pleas on October 23, 1991. On November 13, 1991, the district court filed an order which set out in detail the court's reasons for denying the motion. The district court first found that the 47-day delay between the entry of the guilty pleas and defendant's attempt to withdraw the pleas was an excessive amount of time to reconsider the consequences of the pleas. Second, the court found that defendant's assertion that he was under duress to plead guilty so that his relatives could obtain favorable dispositions of their cases was unfounded because all of his relatives had entered their guilty pleas prior to the time defendant pled guilty. The court further noted that even if defendant had been coerced into pleading guilty, he failed to bring that to the court's attention at sentencing, and since he would have known of the coercion at the time of his guilty pleas, the coercion could not serve as a basis for the withdrawal of the plea. Finally, the district court determined that allowing defendant to withdraw his guilty pleas would prejudice the government. In this regard, the court noted that prior to the guilty pleas, the government had prepared for trial and had presented 31 hours of testimony from witnesses during the six days of trial.
 
 
 22
 On November 15, 1991, or two days after the district court's denial of his motion to withdraw his guilty pleas, defendant's previously scheduled sentencing hearing was held. However, although defendant's counsel was present, defendant insisted on representing himself. At that time, defendant again brought up the issue of his guilty pleas. He stated:
 
 
 23
 I was forced into a plea, and I'm not going to accept that. My family was used to force me to plea. And regardless of what anyone says, it was done under duress.
 
 
 24
 J.A. p. 142. The district court responded:
 
 
 25
 Well, I want the record once again to clearly indicate that at the time Homer Hess entered his plea (sic) of guilty all other defendants had entered their pleas of guilty and Mr. Hess was at liberty to continue with the trial.
 
 
 26
 * * *
 
 
 27
 .... And I want it to be very clear on the record that your allegations are false in fact with respect to the timing of the guilty pleas. You were at liberty to continue with the trial. And the government was stuck with the fact that they had already accepted the guilty pleas of everybody else.
 
 
 28
 J.A. pp. 142-43. The court then proceeded to sentence defendant to 21 months imprisonment, to be followed by three years of supervised release. The sentence imposed by the district court was based upon the terms of the plea agreement between defendant and the government, which stated that defendant's conduct placed him at a total offense level of 14, in criminal history category I, for a sentencing guideline range of 15 to 21 months. This timely appeal followed.
 
 II.
 
 29
 Defendant argues that the district court abused its discretion by failing to conduct an evidentiary hearing prior to ruling on his presentence pro se motion to withdraw his guilty pleas. Defendant asserts that he presented specific factual allegations of coercion which were based upon alleged occurrences outside the record, and, therefore, an evidentiary hearing should have been granted prior to the denial of his motion to withdraw his guilty pleas.
 
 
 30
 Under Federal Rule of Criminal Procedure 32(d), a court "may permit withdrawal of a plea upon [a] showing by the defendant of any fair and just reason." See United States v. Alexander, 948 F.2d 1002, 1003 (6th Cir.1991) (per curiam), cert. denied, 112 S.Ct. 1231 (1992). Permission to withdraw a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court. See United States v. Goldberg, 862 F.2d 101, 103 (6th Cir.1988); United States v. Spencer, 836 F.2d 236, 238 (6th Cir.1987). Accordingly, this court reviews the district court's denial of a defendant's motion to withdraw his plea under an abuse of discretion standard. See United States v. Triplett, 828 F.2d 1195, 1197 (6th Cir.1987).
 
 
 31
 Further, it is well settled that the movant has the burden of establishing that his presentence motion to withdraw his plea should be granted. Id. This court has enumerated a number of factors to be considered by the district court in determining whether a defendant has established a "fair and just reason" to withdraw his guilty plea. These factors include: (1) whether the movant has asserted a defense or whether he has consistently maintained his innocence; (2) the length of time between the entry of the plea and the motion to withdraw; (3) why the grounds for withdrawal were not presented to the court at an earlier time; (4) the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant, and whether he has admitted his guilt; and (5) potential prejudice to the government if the motion to withdraw is granted. Goldberg, 862 F.2d at 103-04.
 
 
 32
 Additionally, a district court's denial of an evidentiary hearing on a defendant's motion to withdraw a plea of guilty is also reviewed under the abuse of discretion standard. See United States v. Casey, 951 F.2d 892, 894 (8th Cir.1991), cert. denied, 112 S.Ct. 2284 (1992); Triplett, 828 F.2d at 1199. Finally, courts generally have required that an evidentiary hearing be held on a motion to withdraw a plea only when a "fair and just reason" for withdrawal of the plea is presented. See United States v. Fountain, 777 F.2d 351, 358 (7th Cir.1985), cert. denied, 475 U.S. 1029 (1986); United States v. Thompson, 680 F.2d 1145, 1152 (7th Cir.), cert. denied, 459 U.S. 1089 (1982) and 459 U.S. 1108 (1983)).
 
 
 33
 In this case, defendant failed to satisfy his burden of showing a "fair and just reason" which would require either an evidentiary hearing or permit him to withdraw his guilty pleas. First, defendant waited 47 days after he pled guilty before attempting to withdraw the pleas. The purpose of Rule 32(d) is not to allow a defendant to make a tactical decision to enter a guilty plea, wait several weeks, and then obtain a withdrawal if he concludes that his guilty plea was the wrong choice. Spencer, 836 F.2d at 239 (citing United States v. Carr, 740 F.2d 339, 345 (5th Cir.1984), cert. denied, 471 U.S. 1004 (1985)).
 
 
 34
 In this case, defendant's delay of almost seven weeks before attempting to withdraw his guilty pleas was clearly prejudicial to the government. In this connection, we note again that defendant did not enter his guilty pleas until after his trial had lasted nearly six days. Permitting defendant to withdraw his guilty pleas under such circumstances and requiring the government to prepare for and hold another trial would definitely work a substantial hardship and prejudice to the government.
 
 
 35
 Third, defendant's claim that his guilty pleas were the product of coercion is belied by the fact that he was the last of all the defendants to plead guilty as well as the care taken by the district court at the change of plea hearing to ensure that defendant's pleas were voluntarily, intelligently, and knowingly made. "[A] guilty plea is a grave and solemn act to be accepted only with care and discernment...." Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468 (1970). A defendant's declarations in open court carry a strong presumption of verity. See Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977). "A defendant's statements at a plea hearing 'should be regarded as conclusive [as to truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth' of those statements." United States v. Estrada, 849 F.2d 1304, 1306 (10th Cir.1988) (quoting Hedman v. United States, 527 F.2d 20, 22 (10th Cir.1975)).
 
 
 36
 A review of the record shows that the district court conducted the change-of-plea hearing in accordance with the dictates of Federal Rule of Criminal Procedure 11. Indeed, at the plea hearing, the district court thoroughly and painstakingly went to great lengths to ensure that defendant's guilty pleas were voluntarily, intelligently, and knowingly made. Defendant asserts, however, that because his plea agreement was part of a "package deal" with the government concerning all of his relatives, the district court should have been aware that his guilty pleas were the product of government duress or coercion based upon his desire to help and protect his son, co-defendant Ben E. Hess.
 
 
 37
 When a guilty plea is challenged as being the product of coercion, the concern is not solely with the subjective state of mind of the defendant, but also with the constitutional acceptability of the external forces inducing the guilty plea. See Iaea v. Sunn, 800 F.2d 861, 866 (9th Cir.1986). There is a general consensus that guilty pleas made in consideration of lenient treatment of persons other than the accused pose a greater danger of coercion than purely bilateral plea bargaining, and, therefore, special care is required to ascertain the voluntariness of guilty pleas entered under such circumstances. See Bordenkircher v. Hayes, 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8 (1978); United States v. Usher, 703 F.2d 956, 958 (6th Cir.1983); United States v. Nuckols, 606 F.2d 566, 569 (5th Cir.1979).
 
 
 38
 At the change-of-plea hearing, the district court demonstrated sensitivity to the possibility that such a situation was present in this case. The district court specifically inquired of defendant whether he was entering his guilty plea to obtain favorable treatment for his son or other relatives who were co-defendants in this case. Defendant responded to the district court's inquiry that his pleas were voluntary, although he felt he had no choice but to plead guilty. The district court then further inquired of the defendant if threats had been made against him in order to persuade him to plead guilty or if promises, other than those set forth in the plea agreement, had been made to him. Defendant responded in the negative to both inquiries by the district court. Given the circumstances of this case, we hold that the district court took all the steps necessary and possible at the change-of-plea hearing to ensure that defendant's pleas were not the product of coercion arising from prosecutorial threats or promises concerning his son or other relatives.
 
 
 39
 Accordingly, we hold that defendant failed to satisfy his burden of demonstrating the presence of a fair and just reason for withdrawal of his guilty pleas. Therefore, the district court did not abuse its discretion in declining to allow defendant to withdraw his guilty pleas, and it thus follows that there was no abuse of discretion in not holding an evidentiary hearing on the motion.
 
 III.
 
 40
 For the reasons stated, the district court's judgment is AFFIRMED.